

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-2007

# Blaylock v. Philadelphia

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2785

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Blaylock v. Philadelphia" (2007). *2007 Decisions.* Paper 317.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/317

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 06-2785

———————

ANDRE BLAYLOCK

v.

THE CITY OF PHILADELPHIA; REYNOLDS,
PHILADELPHIA POLICE OFFICER,
BADGE # 4268; WALKER, PHILADELPHIA
POLICE OFFICER, BADGE # 3730; CUJDIK,
PHILADELPHIA POLICE OFFICER,
BADGE # 1574; LICIARDELLO, PHILADELPHIA
POLICE OFFICER, BADGE # 4383;
MALKOWSKI, PHILADELPHIA POLICE SERGEANT,
BADGE # 8832; PHILADELPHIA POLICE OFFICER
DOES 1-5; BADGE NUMBERS UNKNOWN,
INDIVIDUALLY AND IN THEIR CAPACITY AS
POLICE OFFICERS

Brian Reynolds, Thomas Liciardello, Jeffrey
Walker, Louis Cujdik and Chester Malkowski,
Appellants

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-cv-01649)
District Judge:  Hon. Norma L. Shapiro

Argued June 14, 2007

BEFORE:  McKEE, STAPLETON and
NYGAARD, Circuit Judges

(Opinion Filed: October 1, 2007)

Richard G. Tuttle (Argued)
Archer & Greiner
One South Broad Street, Suite 1620
Philadelphia, PA  19107
  Attorney for Appellants

Michael Pileggi (Argued)
437 Chestnut Street, Suite 905
The Lafayette Building
Philadelphia, PA  19106
  and
Jane L. Istvan

2

City of Philadelphia Law Department
1515 Arch Street
One Parkway
Philadelphia, PA  19102
  Attorneys for Appellees

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge

This interlocutory appeal arises out of a case in which Andre Blaylock sued five officers of the Philadelphia Police Department under 42 U.S.C. § 1983, alleging false arrest, excessive force, and malicious prosecution.  At the close of discovery, the officers moved for summary judgment, arguing, *inter alia*, that they were entitled to qualified immunity.  The District Court denied that motion, and the officers now appeal.

We lack the benefit of the District Court's views as to what facts are subject to genuine dispute with respect to the claims of excessive force and malicious prosecution, and we will therefore vacate the District Court's order denying summary judgment on those claims and remand pursuant to the supervisory rule we announced in *Forbes v. Lower Merion Twp.*, 313 F.3d 144 (3d Cir. 2002). We will dismiss the portion of the officers' appeal relating to the false arrest claim for want

of jurisdiction under *Johnson v. Jones*, 515 U.S. 304 (1995).

I

The parties to this case agree that on October 22, 2003, defendant police officers Brian Reynolds, Jeffrey Walker, and Thomas Liciardello arrested Andre Blaylock while he was sitting on the steps of 522 North 38th Street in Philadelphia. He was held on various drug charges until he was released on February 2, 2005, and the charges against him were dropped. The parties dispute how his arrest and incarceration came about.

A

According to Andre Blaylock, on October 7, 2003, Reynolds received a tip from an informant to the effect that Dana and Omar Blaylock (relatives of Andre) were selling drugs near the 500 block of North 38th Street in Philadelphia, and were storing drugs at 522 North 38th Street and at two other addresses in the same area.[1] After receiving the informant's tip, Reynolds performed a "record check" on Omar and Dana, which connected them to the latter two addresses and revealed that both had several prior arrests. Reynolds shared that information with Walker. The parties agree that Omar was incarcerated during all times relevant to this case. Walker and Officer Louis Cudjik set up surveillance that afternoon and observed Dana and another black male participate in drug transactions at 522 North 38th Street. That same day, Cudjik met with a confidential informant and arranged a controlled narcotics purchase, in

---

[1]All three addresses are within a one-block area.

which the informant gave prerecorded buy money to Dana in exchange for two plastic bags of crack cocaine provided by Dana's accomplice.

On October 21, 2003, Walker and Cudjik arranged for another controlled purchase at the same location, and observed Dana and his accomplice performing additional drug transactions. Walker and Cudjik set up another controlled buy that afternoon. After obtaining police photographs of Dana and Omar Blaylock to confirm their identities as the men he observed selling drugs, Walker filled out an affidavit of probable cause, identifying Dana and Omar as the people he had observed, and obtained a search warrant for 522 North 38th Street and for the other two addresses the informant identified in the initial tip.

On October 22, 2003, Andre Blaylock was sitting on the steps of 522 North 38th Street, and Officers Reynolds, Walker, and Liciardello arrested him. According to Andre, the officers handcuffed him, threw him on the ground, and beat him, despite the fact that he did not resist, possessed no contraband, and was not the person the police had observed selling drugs with Dana. After complaining repeatedly of his injuries, Andre was taken to the hospital. After the arrest, the officers filled out an Investigation Report, which is nearly identical to the affidavit of probable cause, but substitutes Andre's name for Omar's throughout the description of what the officers observed prior to arresting Andre.

## B

The officers largely agree with Andre's allegations, but

5

with a few important exceptions.  First, according to them, Andre was the person they observed selling drugs with Dana. The officers believed that that person was Omar because of the informant's tip and because Andre resembled the police photograph of Omar.  Although Officer Reynolds's "record check" showed that Omar was incarcerated at the time, he insists that he believed that the record check had given him erroneous information.

Second, the officers dispute Andre's allegation that they used excessive force in arresting him.  According to them, they ordered Andre to lie on the ground while they applied handcuffs, Andre complied, and no significant force was used.

Finally, although Andre denies that he possessed any contraband or that the officers confiscated any contraband from him, the officers assert that when Andre was in detention, they searched him and seized crack cocaine from his waistband, and that the charges against him were dismissed only because the crack was suppressed.

C

At the close of discovery, the officers moved for summary judgment on all of Andre's claims on the basis of qualified immunity.  The District Court heard argument on the motion and denied it on May 18, 2006.  The officers filed a notice of appeal the following day and, on June 6, the District Court filed a memorandum in support of its order, explaining its denial of qualified immunity on the false arrest claim. *Blaylock v. Reynolds*, No. 05-1649, 2006 WL 1582308 (E.D. Pa. June 6,

6

2006).

## II

Our jurisdiction to hear this appeal depends on whether we may treat the District Court's order as a "final decision of the district court[]" within the meaning of 28 U.S.C. § 1291. Under the collateral order doctrine, an interlocutory order of a district court may be treated as a "final decision" if it: "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978))); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526-28 (1985) (same).[2]

A district court's order denying a motion for summary judgment on qualified immunity grounds generally meets the first and third criteria, because qualified immunity "is an immunity from suit rather than a mere defense to liability," and is therefore "effectively lost if a case is permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Mitchell*, 472 U.S. at 526-27 (same). The more difficult question is whether

---

[2]For certain classes of cases, Congress has authorized interlocutory or "immediate" appeals through other statutory provisions. *See Johnson*, 515 U.S. at 309-10 (citing 28 U.S.C. §§ 1292, 1651, 2072; Fed. R. Civ. P. 54(b)). None of those provisions are applicable here, however.

and to what extent the appealed order resolves an important issue "completely separate from the merits of the action."

In an interlocutory appeal of this type, we lack jurisdiction to review questions of "evidence sufficiency." *Johnson*, 515 U.S. at 313. That is, if a district court determines "that there is sufficient record evidence to support a set of facts under which there would be no immunity," we must accept that set of facts on interlocutory review. *Schieber v. City of Phila.*, 320 F.3d 409, 415 (3d Cir. 2003) (citing *Johnson*); *see also Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 147-48 (3d Cir. 2002) ("When a defendant argues that a trial judge erred in denying a qualified-immunity summary-judgment motion because the judge was mistaken as to the facts that are subject to genuine dispute, the defendant's argument cannot be entertained under the collateral-order doctrine but must instead await an appeal at the conclusion of the case."). Once we accept the set of facts that the District Court found to be sufficiently supported, however, we may review the District Court's conclusion that the defendants would not be immune from liability if those facts were proved at trial. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the [qualified immunity] standard of 'objective reasonableness.'"); *Rivas v. City of Passaic*, 365 F.3d 181, 192 (3d Cir. 2004) ("[I]f a defendant in a constitutional tort case moves for summary judgment based on qualified immunity and the district court denies the motion, we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove;

but we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right.") (quoting *Ziccardi v. City of Philadelphia*, 288 F.2d 57, 61 (3d Cir. 2002)).

Thus, for each of Andre Blaylock's claims,[3] our jurisdiction to review the District Court's order denying summary judgment depends on whether the defendants' appeal raises pure questions of law or whether it challenges the District Court's determination of which facts were sufficiently supported by evidence.

III

In *Johnson*, the Supreme Court recognized that it is often a difficult endeavor for a court of appeals to "try to separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." 515 U.S. at 319. The Court suggested that district courts should assist the courts of appeals by stating the facts that they assume when they

---

[3] In *Behrens*, the Supreme Court explained that qualified immunity "is a right to immunity *from certain claims*, not from litigation in general," and that "when immunity with respect to those claims has been finally denied, appeal must be available and cannot be foreclosed by the mere addition of other claims to the suit." 516 U.S. at 312 (original emphasis). We therefore assess our jurisdiction to hear this appeal on a claim-by-claim basis.

deny summary judgment, and noted that when the district courts do not do so, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* In *Forbes*, we made a supervisory rule to enlist the assistance of the district courts:

> We . . . announce a supervisory rule to be followed in all subsequent cases in which a summary judgment motion based on qualified immunity is denied on the ground that material facts are in dispute. So that we can carry out our review without exceeding the limits of our jurisdiction under *Johnson v. Jones* . . . we will henceforth require the District Courts to specify those material facts that are and are not subject to genuine dispute and explain their materiality.

313 F.3d at 146. When presented with an interlocutory appeal in which the district court has not followed that directive, we have remanded for it to do so. *See, e.g.*, *Hamilton v. Leavy*, 322 F.3d 776, 785-86 (3d Cir. 2003) (applying the *Forbes* rule in the context of absolute immunity and remanding); *Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3d Cir. 2003) (remanding for additional findings on the qualified immunity issue and for more specific findings on the actions of the individual defendants).

In this case, the District Court did not discuss the excessive force or malicious prosecution claims in its memorandum opinion because it apparently did not understand the defendants to have asserted a qualified immunity defense

10

with respect to those claims. *Blaylock*, 2006 WL 1582308 at *1 ("At the close of discovery, defendants moved for summary judgment, claiming failure of proof on all claims and qualified immunity on the false arrest claim."). On appeal, the officers insist that they did assert such a defense, and our review of their motion and memorandum of law filed with the District Court persuades us that they are correct. Although the officers focused most of their briefing on the false arrest claim, they also argued that they were entitled to qualified immunity on the excessive force and malicious prosecution claims. The transcript of the motion hearing reflects some discussion of those claims, but we are unable to discern from the transcript with any certainty what the District Court's reasons were for denying the officers' motion for summary judgment on them. We will therefore apply the supervisory rule of *Forbes*, and remand so that the District Court can address the defendants' qualified immunity arguments on Andre's claims of excessive force and malicious prosecution and, if it rules against the defendants, "specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Forbes*, 313 F.3d at 146.

IV

The substance of Andre Blaylock's false arrest claim is that the defendants arrested him without probable cause.[4] On

---

[4]As the District Court understood Blaylock's false arrest claim, it was based on two separate but overlapping theories: (1) that Officer Walker knowingly made false statements in the affidavit of probable cause, and (2) that Blaylock was simply arrested without probable cause. *Blaylock*, 2006 WL 1582308

11

that claim, we do have the benefit of the District Court's analysis in support of its decision to deny the officers' motion for summary judgment and we will therefore address it.

A

The qualified immunity standard is one of "objective legal reasonableness." *Harlow v. Fitzgerald*, 457 U.S. 800, 816-17, 819 (1982). Although the question of what facts the arresting officer knows is relevant to the inquiry, his subjective motivation for making the arrest is not. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Anderson v. Creighton*, 483 U.S. 634, 641 (1987); *Harlow*, 457 U.S. at 816-19. Accordingly, the defendants are entitled to qualified immunity here "if a reasonable officer could have believed that probable cause existed" to arrest Andre Blaylock "in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991); *Anderson*, 483 U.S. at 641.

As noted above, we lack jurisdiction to review the District Court's determination of which facts are subject to genuine dispute. The ultimate conclusion of "objective legal

_____

at *5. The District Court rejected the first theory because it found that any misstatements in the affidavit of probable cause were not material. As the Court stated, "Plaintiff was not arrested because his name was improperly included in the affidavit of probable cause; rather, plaintiff was arrested because Walker allegedly recognized him as the man he had previously observed selling drugs with Dana Blaylock." *Id.* at *6.

12

reasonableness"—*i.e.* whether, accepting the District Court's determination of which facts are subject to genuine dispute, a reasonable officer could have believed that probable cause existed to arrest Andre Blaylock—however, is a question of law that we may properly resolve. *See Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005); *Weaver v. Shadoan*, 340 F.3d 398, 405-06 (6th Cir. 2003).

B

The officers' precise position with respect to the false arrest claim is not completely clear, but a fair reading of their brief suggests two possibilities—the officers had probable cause to arrest Andre because, even if he had not been involved in selling drugs, they: (1) could reasonably have mistaken Andre for Omar Blaylock at the time of the arrest, or (2) could reasonably have mistaken Andre for the person they observed selling drugs with Dana. To accept either of those propositions would require us to review the District Court's determination of which facts are subject to genuine dispute which, as we have already emphasized, *Johnson v. Jones* precludes us from doing in an interlocutory appeal.

The defendants' first theory presupposes that defendants had knowledge of facts providing a reasonable basis for concluding: (1) that Omar was Dana's accomplice, and (2) that the person they arrested was Omar. The District Court appears to have found that a reasonable trier of fact could conclude that officers in defendants' position had reason to believe that Omar was in prison and, accordingly, could have no reasonable basis

13

for concluding at the time of the arrest that Andre was Omar.[5] *Blaylock*, 2006 WL 1582308 at \*6-7. If we accept, as we must, that the officers knew that Omar was in prison, then it was plainly unreasonable for them to have mistaken Andre for Omar. To entertain the officers' arguments to the contrary would require us to review the District Court's determination that their knowledge was subject to genuine dispute, which we lack jurisdiction to do under *Johnson v. Jones*.

In support of their second theory—that the officers could reasonably have mistaken Andre for the person they observed selling drugs with Dana—the officers assert that they observed a person who looked like Omar selling drugs with Dana. Even if they knew that Omar was in prison, they had the informant's tip that Omar was selling drugs with Dana. Thus, the officers argue, they could reasonably have surmised that the informant mistook Dana's accomplice for Omar. Further, even accepting that Andre was not the accomplice, they could have mistaken him for the accomplice because he resembles Omar's photograph. In other words, because the evidence suggests that both Dana's accomplice *and* Andre resemble Omar, Dana's

---

[5]There is some language in the District Court's memorandum opinion which suggests that the District Court viewed the officers' subjective motive for arresting Andre as a material fact subject to dispute. If that was the District Court's view, it is incorrect because, as we have already stated, in a qualified immunity case, the question of probable cause to arrest is an objective inquiry that does not depend on the officers' subjective motivations. *See Devenpeck*, 543 U.S. at 153; *Anderson*, 483 U.S. at 641; *Harlow*, 457 U.S. at 816-19.

14

accomplice and Andre could reasonably have been mistaken for each other. That logic is dubious, but even if we accept it, that would not help the defendants, because the District Court determined that the degree of resemblance between Andre and Omar and between Dana's accomplice and Omar are both facts subject to genuine dispute. *See Blaylock*, 2006 WL 1582308 at *6-7.

The defendants resist that conclusion by arguing that the degree of resemblance between Andre and Dana's accomplice is not a historical fact, but is more in the nature of the ultimate conclusion of arguable probable cause, and that we may therefore make an independent determination of whether the officers acted reasonably in arresting Andre. The defendants note that the record contains police photographs of both Andre and Omar and argue that the photographs are undisputed evidence of the similarity in appearance between Andre and Dana's accomplice, and that this court can examine the photographs for itself and hold that the officers had at least arguable probable cause to arrest Andre. In support of their argument, they rely principally on *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), in which we made an independent determination—based in part on a videotape that was in the record—that the defendant police officer had at least arguable probable cause to arrest the plaintiff for disorderly conduct and was therefore entitled to qualified immunity. *Id.* at 206-07.

In *Gilles*, however, we reviewed a District Court's *grant* of summary judgment, and we therefore had no reason to consider the limits that 28 U.S.C. § 1291 and *Johnson v. Jones* place on our jurisdiction to hear interlocutory appeals in

15

qualified immunity cases. More directly on point, however, is the Supreme Court's recent decision in *Scott v. Harris*, 127 S. Ct. 1769 (2007).[6] In *Scott*, a police officer (Scott) pursued a fleeing motorist (Harris) and, after approximately six minutes and ten miles of pursuit, rammed Harris's car in an effort to end the pursuit. *Id.* at 1772-73. The collision caused Harris to lose control of his car, which left the roadway, ran down an embankment, overturned, and crashed. *Id.* at 1773. Harris suffered injuries that rendered him quadriplegic, and he sued Scott under 42 U.S.C. § 1983, alleging use of excessive force resulting in an unreasonable seizure under the Fourth Amendment. *Id.*

In his complaint, Harris alleged that he was driving carefully and presented no danger to other motorists or bystanders. The District Court denied the officers' motion for summary judgment of qualified immunity, finding, *inter alia*, that there was a genuine dispute of fact regarding Harris's conduct during the chase, and that, viewing the disputed facts in the light most favorable to Harris, Harris was doing nothing dangerous other than driving 73 miles per hour in a 55-miles-per-hour zone. *Harris v. Coweta County*, No. 01-CV-148, 2003 WL 25419527, at *5 (N.D. Ga. Sept. 25, 2003) ("Under this version of the facts, a fact finder could conclude that when Scott rammed Harris's vehicle, he faced a fleeing suspect who, but for the chase, did not present an immediate threat to the safety of others since the underlying crime was driving 73 miles per hour in a 55 miles-per-hour zone. A jury could also find that Scott's

---

[6]*Scott* was decided after the briefing in this case concluded, so we do not fault the parties for failing to discuss it.

16

use of force—ramming the car while traveling at high speeds—was not in proportion to the risk that Harris posed, and therefore was objectively unreasonable."). On interlocutory appeal, the Court of Appeals affirmed, citing the District Court's discussion of the facts, taken in the light most favorable to Harris. *Harris v. Coweta County*, 433 F.3d 807, 815-16 (11th Cir. 2005) ("As noted by the district court judge, taking the facts from the non-movant's viewpoint, Harris remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns. He did not run any motorists off the road.").

The Supreme Court reversed, relying primarily on the existence and contents of a videotape that, in its view, "quite clearly contradict[ed] the version of the story told by [Harris] and adopted by the Court of Appeals." Despite the District Court's determination that Harris's conduct was subject to reasonable dispute, as the Supreme Court majority assessed the contents of the videotape (the authenticity of which was undisputed):

> The videotape tells quite a different story. There we see respondent's vehicle racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast. We see it swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit. We see it run multiple red lights and travel for considerable periods of time in the occasional center left-turn-only lane, chased by

17

> numerous police cars forced to engage in the same hazardous maneuvers just to keep up. Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury.

*Scott*, 127 S. Ct. at 1775-76 (footnotes omitted). On that basis, the Court concluded Scott was entitled to qualified immunity because his actions were objectively reasonable. The Court acknowledged that district courts must give the nonmoving party the benefit of all reasonable inferences at the summary judgment stage, and that under the District Court's determination of which facts were subject to genuine dispute, if one resolved the disputes in Harris's favor, "one gets the impression that [Harris], rather than fleeing from police, was attempting to pass his driving test." *Id.* at 1775. However, the Court noted its admonition in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) that only a *genuine* dispute of material fact will preclude summary judgment, and stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 1776. Neither the majority nor the dissent in *Scott* cited *Johnson* or *Behrens* or discussed the limits of the collateral

order doctrine in qualified immunity cases.[7]

In *Scott*, although the District Court held that Harris's conduct during the chase (other than his speeding) was a fact subject to reasonable dispute, the Supreme Court disagreed. *Scott* would thus appear to support the proposition that, in this interlocutory appeal, we may exercise some degree of review over the District Court's determination that the degree of resemblance between Andre and Dana's accomplice is subject to reasonable dispute. In *Scott*, however, the District Court was charged with determining whether the defendants' conduct was reasonable under the circumstances, and the Court had before it a videotape of undisputed authenticity depicting all of the defendant's conduct and all of the necessary context that would allow the Court to assess the reasonableness of that conduct. Moreover, as the Supreme Court held, the videotape clearly supported Scott's version of events, and "blatantly contradicted" Harris's. Such a scenario may represent the outer limit of the principle of *Johnson v. Jones*—where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review. Here, by contrast, we have only two police photographs, and an argument by the defendants not that the two men depicted are similar in appearance, but that one of the men depicted in the photographs must be similar in

_____

[7]It should be noted that the Supreme Court disagreed with the lower court as to what Harris's actions actually were, and not merely with whether his actions could be described as "dangerous to others."

appearance to a third person whose picture we do not have. As the District Court noted, the photographs show little more than that "both Omar and Andre Blaylock are young black men who had short hair at the time their police photographs were taken," *Blaylock*, 2006 WL 1582308 at *7, and, other than the officers' affidavits stating that they thought they were observing Omar selling drugs with Dana, there is "no evidence relating to the physical characteristics of [Dana's accomplice]." Moreover, as Andre's counsel noted at argument, the photographs do not depict Andre's or Omar's height, weight, or build. Thus, unlike *Scott v. Harris*, we do not have a situation in which "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." Even if we assume that the photographs are so similar to each other that a police officer could reasonably mistake one photograph for the other, that does not establish that no reasonable jury could find that Andre did not resemble Dana's accomplice (who is undisputedly not Omar).

Because the officers make no arguments regarding the false arrest claim that do not ask us to contradict the District Court's determination of which facts are subject to genuine dispute, we will dismiss that portion of their appeal for lack of jurisdiction under *Johnson v. Jones.*

V

For the reasons set forth above, we will vacate the District Court's denial of summary judgment on the excessive force and malicious prosecution claims and remand for further proceedings in accordance with the supervisory rule we

20

established in *Forbes v. Lower Merion Twp.*, 313 F.3d 144 (3d Cir. 2002).  We will dismiss the remainder of the defendants' appeal for lack of jurisdiction.

Nygaard, J., *Concurring.*

I fully agree with the majority that we lack jurisdiction to review the District Court's denial of qualified immunity on the false arrest claim. Further, I take no issue with the majority's decision to remand this matter to the District Court for further clarification pursuant the supervisory rule we announced in *Forbes v. Twp. of Lower Merion*, 313 F.3d 144 (3d Cir. 2002). I write separately, however, out of concern that the majority's opinion does not appear to give the District Judge the full benefit of her analysis. The majority believes that the District Judge failed to understand that the defendants asserted a qualified immunity defense with respect to all claims. Indeed, Judge Shapiro specifically held that the police officer defendants "have asserted qualified immunity on the false arrest claim only." If indeed the District Judge did not understand upon which claims the police officers sought qualified immunity, I

22

empathize.  In their memorandum in support of their motion for qualified immunity, the police officers acknowledge that Blaylock's claims rest "on his contention that he was arrested without probable cause for someone else's misdeeds."  Further, they characterize Blaylock's claims this way: "what plaintiff does claim is that the defendants arrested the wrong person." Nowhere in their principal discussion of the case do the police officers mention or characterize Blaylock's excessive force or malicious prosecution claims.

In reviewing what I believe to be inartfully drafted motions and memoranda filed in the case, I am left with some question as to precisely what the officers are arguing.  For example, as to Officer Walker, they argue that "in simple terms, plaintiff was arrested upon probable cause and his claims under Section 1983 and under state law for false arrest fail for that reason."  Clearly, the police officers argue for the imposition of

23

qualified immunity on the false arrest claim. Just as clearly, they make no mention of the malicious prosecution claim. With respect to the excessive force claim against Officer Walker, the officers do not seem to assert qualified immunity at all, stating "plaintiff has no claim against Officer Walker for use of excessive force because no such claim . . . was asserted in the second amended complaint." This could be understood as asking for judgment in his favor based on a perceived waiver.

Next, the defendants discuss Officer Brian Reynolds. Here again, they maintain that "[p]laintiff alleges excessive force in connection with his arrest, but can offer no evidence to support that claim." They make only a passing reference to the excessive force claim, without identifying that claim or mentioning qualified immunity: "insofar as he was required to lie down and was handcuffed during the search, that level of force is lawful as a matter of law."

24

Things are argued a bit differently with Officer Liciardello. Here, the defendants submit that "Plaintiff alleges excessive force by Officer Liciardello in connection with this arrest, but can offer no evidence to support that claim." No mention is made of the false arrest claim or the malicious prosecution claim.

Two defendants remain: Officers Cujdik and Malkowski. As to Cujdik, the defendants make arguments that do not appear to touch on any of Blaylock's claims. First, the officers argue that "none of Cujdik's actions [in observing various drug transactions], implicate any rights of the plaintiff." I view this as an attempt to argue that Cujdik has qualified immunity on the false arrest claim because the officer's argument continues, "Plaintiff claims not to have been present for those transactions, and he certainly cannot claim that officer Cujdik harmed him in any way in reporting what he saw." The remaining defendant is

25

Officer Malkowski.  Here, the officers argue that the absence of any allegations in the second amended complaint against Malkowski entitle him to summary judgment.  It is unclear to me, however, whether they argue this entitlement is based on qualified immunity, or simply the absence of any allegations against Malkowski.

The majority's opinion indicates that "although the officers focused most of their briefing on the false arrest claim, they also argued that they were entitled to qualified immunity on the excessive force claim and malicious prosecution claims." After reviewing their motion for qualified immunity, I am not certain that the District Court erred by concluding that "defendants have asserted qualified immunity on the false arrest claim only." However, because the motion and memoranda are far from clear, I do not object to remanding the cause to the District Court for it to clarify its reasons for denying qualified

26

immunity as to claims for excessive force and malicious prosecution, if indeed it finds such claims to have been properly raised in the first place.