# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
April 30, 2010

No. 09-50821

Lyle W. Cayce
Clerk

DIANE SANCHEZ, Individually and as Representative of the Estate of Chad Stephen Sanchez; MELISSA VALENZUELA, as Next Friend for Chad Stephen Sanchez and Jacob Bo Sanchez, Minor Children; AMANDA LARA, as Next Friend for Breauna Lara, Minor Child,

Plaintiffs - Appellees

v.

MATT FRALEY, Individually and in his Official Capacity; MICHAEL HEDRICK, Individually and in his Official Capacity,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC 7:08-CV-115

Before KING, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Chad Stephen Sanchez was shot and killed during an encounter with law enforcement officers in Midland, Texas. His survivors brought this action under 42 U.S.C. § 1983, claiming that Sanchez's Fourth Amendment rights were violated when Detective Matt Fraley and Sergeant Michael Hedrick

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

unnecessarily used deadly force during his apprehension. The district court denied the officers' motion for summary judgment, finding that genuine issues of material fact precluded dismissal on the basis of qualified immunity. We affirm.

The doctrine of qualified immunity operates to shield "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "[A]n order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). The limitation to issues of law circumscribes the scope of our review: "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995); *accord Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc) ("We do have jurisdiction, but only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record."). "'Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.'" *Good v. Curtis*, — F.3d —, 2010 WL 1038547, at *3 (5th Cir. 2010) (quoting *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)). "Within this limited appellate jurisdiction, this court reviews a district court's denial of a motion for summary judgment on the basis of qualified immunity in a § 1983 suit de novo."

No. 09-50821

*Id.* (alterations and internal quotation marks omitted).

Assessing a defendant's entitlement to qualified immunity consists of two separate inquiries. First, we ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). We then ask whether the right violated was clearly established at the time. *Id.* While it is "often appropriate" to answer these two questions sequentially, courts are vested with "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 129 S. Ct. at 818.

The Supreme Court has stated that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In addressing the two aspects of qualified immunity, we must "make two 'overlapping objective reasonableness inquiries.'" *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (alteration omitted) (quoting *Saucier*, 533 U.S. at 210), *cert. denied*, — S. Ct. —, 2010 WL 182938 (Mar. 22, 2010) (No. 09-851).

> We must first answer the constitutional violation question by determining whether the officer[s'] conduct met the Fourth Amendment's reasonableness requirement . . . . If we find that the officer[s'] conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the

3

somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. Despite any seeming similarity between these two questions, they are distinct inquiries under *Saucier*, and we must conduct them both.

*Id.* In undertaking this analysis, we consider separately the conduct of Detective Fraley and Sergeant Hedrick. *See Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).

To succeed on a claim of excessive force, "[a] plaintiff must prove injury suffered as a result of force that was objectively unreasonable." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). Ordinarily, "[t]o determine whether a seizure was objectively reasonable . . . , we ask 'whether the totality of the circumstances justified that particular sort of search or seizure.'" *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004) (alteration omitted) (quoting *Garner*, 471 U.S. at 8–9). However, "[w]hen an officer uses deadly force, our 'objective reasonableness' balancing test is constrained." *Id.* at 399. "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.* (alteration omitted) (quoting *Garner*, 471 U.S. at 3); *see also Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.").

With respect to Detective Fraley, the district court held that the parties had raised genuine issues of fact that bore directly on the reasonableness of his use of force. It is undisputed that Sanchez was unarmed when he was shot and killed. Detective Fraley admitted firing several shots at Sanchez. Jessica Chavez, an eyewitness, testified in her deposition that she saw a uniformed

officer fire multiple shots at Sanchez while Sanchez had his hands at his sides and had ceased running. Detective Fraley testified in his deposition that he knew Sanchez was a suspect in a double homicide, and Detective Fraley also testified that he had heard on the police radio that Sanchez had a gun and had forcibly attempted to enter somebody's house. He testified further that Sanchez was digging in his waistband and pointing his hands under his shirt as though aiming a weapon. However, we must construe the facts in the light most favorable to Sanchez. *See Lytle*, 560 F.3d at 409 ("[W]e 'are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.'" (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007))). Accepting, as we must, Chavez's testimony as true, then Sanchez did not commit any "undisputed actions," *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009), justifying Detective Fraley's use of deadly force at the moment he encountered Sanchez, and we are compelled to agree with the district court that "a rational jury could find that [Detective] Fraley's use of lethal force was excessive" and that he "is not entitled to qualified immunity under the first prong" of the *Saucier* inquiry. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001) ("The excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the . . . shooting . . . ." (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992))).

With respect to Sergeant Hedrick, the district court similarly determined that a jury could find his use of deadly force excessive under the circumstances. It based this determination on the fact that Sergeant Hedrick admitted to intentionally discharging his rifle into the back of Sanchez's head after Sanchez had been shot twice, was lying on the ground, and was being subdued by at least two officers. The officers cite their own deposition testimony that Sanchez, while on the ground, was pressing his right arm up against the inside of his shirt as

though aiming a firearm. However, it is undisputed that Sanchez was unarmed during the encounter, and a bullet had pierced his right forearm, fractured his right ulna, exited his right forearm, and reentered his right biceps muscle. A jury would be entitled to take the injuries to Sanchez's right arm—as well as the officers' status as defendants in this lawsuit—into account in deciding whether the encounter occurred as the officers testified. *Cf. Bazan*, 246 F.3d at 492 ("In the case at hand, the evidence the Trooper claims is uncontradicted and unimpeached comes for the most part, if not exclusively, from an *interested witness*—Trooper Vargas." (citing *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999); *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992) (Phillips, J., dissenting))).

Under the second step of our qualified immunity analysis, we ask "whether the right was clearly established at the time of the conduct." *Lytle*, 560 F.3d at 410 (citing *Saucier*, 533 U.S. at 201). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (stating that, in appropriate cases, "these standards [on the use of deadly force] can 'clearly establish' the answer . . ." (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002))). The relevant conduct in this case occurred on April 23, 2007, but it was clearly established well before that date that "deadly force violates the Fourth Amendment *unless* 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others,'" *Bazan*, 246 F.3d at 488 (quoting *Garner*, 471 U.S. at 11), and that the threat of serious physical harm must be "immediate," *Garner*, 471 U.S. at 11. The evidence, when viewed in the light most favorable to Sanchez, shows that Sanchez did not pose an "immediate" threat to the officers or to others, and we agree with the district court that the officers are not entitled to

No. 09-50821

qualified immunity under the second *Saucier* inquiry.[1]

The only arguably novel twist to this case is the officers' argument that the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), compels a different result. Specifically, the officers argue that the version of events attested to by Chavez is "impossible," "an obvious fiction," and not "competent evidence," relying for those conclusions principally on their own deposition testimony. We disagree that *Scott* allows us to disregard Chavez's testimony.

In *Scott*, Harris, a motorist, sped away instead of pulling over after he was detected speeding. *Id.* at 374. Deputy Scott joined the pursuit in response to a radio broadcast, following Harris on a high-speed chase lasting several minutes. *Id.* at 374–75. Scott ended the chase by pushing his bumper into the rear of Harris's vehicle, causing Harris to lose control, run down an embankment, overturn, and crash. *Id.* at 375. Harris was rendered a quadriplegic as a result, and he sued Scott under § 1983, alleging excessive force. *Id.* at 375–76. The district court denied Scott's motion for summary judgment based on an assertion of qualified immunity, finding genuine issues of material fact, and, on

---

[1] We confronted a similar situation in *Reyes v. Bridgwater*, in which the shooting at issue predated those in this case by more than six months. No. 09-10076, 2010 WL 271422, at *1 (5th Cir. Jan. 22, 2010). The officer urged that the relevant law was not clearly established unless there was "a case with exactly the same facts finding a constitutional violation." *Id.* at *4. We rejected that contention, stating:

> The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others. Here, the facts are unclear; was there such an immediate threat? Bridgwater's version of the facts would say "yes," while the other witnesses' versions would say "no." The case presented here is not one where the law is not clearly established but rather one where the facts are not clearly established. . . . Accordingly, we reverse the summary judgment in favor of Bridgwater on qualified immunity grounds as to the § 1983 claims of the Ceballos Family.

*Id.* at *5. This case is analogous to *Reyes*: the facts, taken in the light most favorable to Sanchez, show that Sanchez posed no immediate serious threat, and we are therefore faced with the type of case contemplated by *Brosseau*, in which "fair warning" is found "in the general tests" of excessive force and deadly force, and the law was clearly established irrespective of the existence of "a body of relevant case law." 543 U.S. at 199.

interlocutory appeal, the Eleventh Circuit affirmed. *Id*. at 376. The Supreme Court noted that the case presented "an added wrinkle" to the summary judgment posture: "existence in the record of a videotape capturing the events in question." *Id*. at 378. Harris had argued that he was not a danger during the chase, but the Court observed that "[t]he videotape quite clearly contradict[ed] the version of the story told by [Harris] and adopted by the Court of Appeals." *Id*. The Court then decided to take the objective videotape evidence into account in rejecting Harris's characterization of his driving:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether [Harris] was driving in such fashion as to endanger human life. [Harris]'s version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id*. at 380–81. Taking the videotape into account, the Court concluded that Scott had acted reasonably as a matter of law and reversed the denial of summary judgment. *Id*. at 386.

Other courts considering *Scott* have concluded that it represents, at most, a narrow exception to the jurisdictional bar imposed by *Johnson v. Jones*. The Third Circuit has noted that *Scott* represents a narrow exception, stating that the situation involving

> a videotape of undisputed authenticity depicting all of the defendant's conduct and all of the necessary context that would allow the Court to assess the reasonableness of that conduct . . . may represent the outer limit of the principle of *Johnson v. Jones*—where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review.

*Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007). Similarly, the Sixth Circuit has noted that *Scott* "recognized an apparent exception to th[e] jurisdictional limitation," that "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Wysong v. Heath*, 260 F. App'x 848, 853 (6th Cir. 2008)), *cert. filed*, 78 U.S.L.W. 3567 (U.S. Mar. 19, 2010) (No. 09-1149); *see also Carter v. City of Wyoming*, 294 F. App'x 990, 992 (6th Cir. 2008) ("[T]he Third Circuit's approach [in *Blaylock*] represents a principled way to read *Johnson* and *Scott* together and to correct the rare blatant and demonstrable error without allowing *Scott* to swallow *Johnson*." (alterations and internal quotation marks omitted) (quoting *Wysong*, 260 F. App'x at 853)).

Our circuit has not yet addressed whether *Scott* carves out an exception, and we need not do so today. If such an exception does exist, then it does not apply on these facts. The district court was presented with a quintessential fact issue—the officers' deposition testimony differed in a material respect from Chavez's deposition testimony. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) ("[T]he conflicting testimony . . . raises unresolved questions about what occurred. We therefore hold that the evidence creates a genuine issue of material fact as to whether, from the perspective of a reasonable officer on the scene, the knee strike was excessive and therefore objectively unreasonable."), *cert. filed*, 78 U.S.L.W. 3501 (U.S. Feb. 16, 2010) (No. 09-983). This case is thus a far cry from *Scott*, where a videotape blatantly and demonstrably contradicted Harris's version of events. To the extent that the officers are challenging Chavez's credibility and personal knowledge,[2] this is

---

[2] The officers have pointed out, for example, that Chavez did not see Detective Fraley bump Sanchez with his car, that she could not see Sanchez when he was on the ground, and

similarly inappropriate for determination on summary judgment. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) ("Any credibility determination made between the officers' and Tarver's version of events is inappropriate for summary judgment." (citing *Bazan*, 246 F.3d at 492)).[3]

For the foregoing reasons, we DENY Sanchez's motion to dismiss the appeal, and we AFFIRM the district court's order denying summary judgment on the basis of qualified immunity.

---

that she did not hear Sergeant Hedrick's shot to Sanchez's head.

[3] The officers also argue that Sanchez's unsworn original complaint is a binding admission, akin to an admission under Rule 36(b) of the Federal Rules of Civil Procedure, that may not be varied by Chavez's account. This argument is misguided. The officers are free to insist that the facts are the way that Sanchez's original complaint asserts, rather than the way that Chavez has testified, but we question whether they truly wish to insist on a set of facts that forms the basis for Sanchez's allegations of their liability.