**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4354
_____

MELINDA WILLIAMS,
as Administrator of the Estate of Brian P. Williams

v.

MARK PAPI; ROBERT ROBERTS; STANLEY ELY;
PAUL MILLER; TERRANCE FISHER; SLADE PROFKA;
JOHN KREIG; ROGER HARDY; WILLIAM OLSZEWSKI;
TUNKHANNOCK TOWNSHIP; OVERFIELD TOWNSHIP;
BOROUGH OF TUNKHANNOCK; MESHOPPEN BOROUGH

Mark Papi; Robert Roberts; Stanley Ely; Paul Miller;
Terrance Fisher; Slade Profka; John Kreig; Roger Hardy;
William Olszewski,

Appellants
_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(D.C. No. 3-13-cv-01151)
District Judge:  Hon. Robert D. Mariani

Argued:  September 14, 2017

Before:  CHAGARES, JORDAN, and NYGAARD, Circuit Judges.

(Filed: October 25, 2017)

Joshua J. Cochran, Esq. (ARGUED)
Michael J. Zicolello, Esq.
Schemery Zicolello
333 Market Street
Williamsport, PA 17701

*Counsel for Appellants*

Shelley L. Centini, Esq. (ARGUED)
Barry H. Dyller, Esq.
Dyller Law Firm
88 North Franklin Street
Gettysburg House
Wilkes-Barre, PA 18701

*Counsel for Appellee*

_____

OPINION*
_____

CHAGARES, Circuit Judge.

The defendant officers appeal from the District Court's denying them summary judgment on the basis of qualified immunity in an excessive force case brought pursuant to 42 U.S.C. § 1983. Because the District Court's decision rested upon findings of disputed facts that we would have to review to resolve the case, we lack jurisdiction to consider the merits question of the officers' entitlement to qualified immunity. However, because the District Court erred as a matter of law in failing to grant summary judgment in favor of some of the officers on the supervisory liability claims, we have jurisdiction over that issue only. We accordingly will dismiss in part and reverse in part.

I.

We assume the parties' familiarity with the factual and procedural history, which we describe only as necessary to explain our decision. Plaintiff Melinda Williams ("Mrs.

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Williams") brought this § 1983 action on behalf of her husband, Brian Williams ("Williams"), who was killed by police who were attempting to take him into custody pursuant to an involuntary commitment warrant obtained after Williams' psychiatrist identified him as a clear and present danger to others.

Officers from multiple municipalities responded to Williams' home in Overfield Township to help take Williams, who had barricaded himself inside, into custody. By the time all the officers had assembled, on the scene were defendants Officer Slade Profka and Corporal Paul Miller of Overfield Township,[1] Chief Stanley Ely and Officers Robert Roberts and Mark Papi of Tunkhannock Township, Chief William Olszewski and Sergeant Roger Hardy of Tunkhannock Borough, and Chief John Kreig of Meshoppen Borough, as well as non-defendants Corporal Dunleavy and Troopers Flynn and Lopez of the Pennsylvania State Police. Defendant Terry Fisher, Chief of the Overfield Township Police, was off duty and did not come to the scene. Fisher, however, was informed of the situation and spoke with Williams — whom he knew — about surrendering to the police.

Ely led negotiations and spoke to Williams several times from outside a side door to the home. While negotiations continued, a group of officers stationed at the front door entered the house using a key that Mrs. Williams had given them. The officers proceeded to the basement where they witnessed an unarmed Williams lock himself in a bedroom. The officers demanded that Williams surrender and he repeatedly warned the officers not to enter. The officers forced their way into the room, where they found Williams

_____

[1] Miller, as the senior Overfield Township officer, was the commanding officer at the scene.

3

wielding a fireplace poker, in a manner that is disputed. Three officers fired Tasers at Williams, which had no effect; Mrs. Williams contends that the barbs never hit him. The officers assert that Williams then raised the poker upward and moved towards them, at which point he was four feet from the nearest officer. Mrs. Williams disputes that Williams raised the poker in such a manner. Papi then shot Williams twice, killing him.

As relevant on appeal, Mrs. Williams brought Fourth Amendment claims against the officers for using excessive force when entering Williams' home and bedroom; a claim of excessive force against Papi for lethally shooting Williams; and supervisory liability claims against certain officers. The defendants moved for summary judgment on all counts on the basis of qualified immunity and Mrs. Williams cross-moved for partial summary judgment on, inter alia, the excessive-force entry claims. On December 7, 2016, the District Court denied both motions, holding that factual disputes precluded it from determining either whether the officers violated Williams' constitutional rights or whether the officers were nevertheless entitled to qualified immunity. Among other facts, the District Court found disputed whether Williams posed an imminent threat to the officers or himself, whether he attempted to resist arrest, and, if so, whether his resistance included the use of threats or violence. The defendants timely appealed.

## II.

## A.

We review our jurisdiction to consider issues in a qualified immunity appeal on a claim-by-claim basis. Blaylock v. City of Philadelphia, 504 F.3d 405, 409 n.3 (3d Cir. 2007). Our jurisdiction under 28 U.S.C. § 1291 is limited to "final decisions," which

4

under the collateral order doctrine includes "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law," because such rulings are "separable from, and collateral to, [the] rights asserted in the action." Mitchell v. Forsyth, 472 U.S. 511, 527, 530 (1985) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). Where, on the other hand, the issue on appeal is a "fact-related dispute" about "whether or not the evidence in the pretrial record [is] sufficient to show a genuine issue of fact for trial," an order is not immediately appealable and we lack jurisdiction to hear the case. Johnson v. Jones, 515 U.S. 304, 307 (1995); see also Behrens v. Pelletier, 516 U.S. 299, 313 (1996) ("[I]f what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision' under Cohen and Mitchell."). For each of Mrs. Williams' claims, our jurisdiction "depends on whether the defendants' appeal raises pure questions of law or whether it challenges the District Court's determination of which facts were sufficiently supported by evidence." Blaylock, 504 F.3d at 409.

Given this limitation on our jurisdiction, the defendants assert that for the purposes of appeal they accept all of the District Court's factual findings and argue that even taking the facts in that light, they are entitled to qualified immunity as a matter of law. The defendants therefore insist that they are not seeking review of whether the District Court's factual determinations were supported by the record and so Johnson does not preclude appellate jurisdiction to consider this purely legal claim. We agree that such an

5

approach is theoretically permissible, see Behrens, 516 U.S. at 313 ("Johnson permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the [Harlow v. Fitzgerald, 457 U.S. 800 (1982),] standard of 'objective legal reasonableness.'"), but nonetheless find it inapplicable here, where we are unable to discern the relevant material facts that pertain to each alleged unconstitutional seizure and where the defendants do not actually accept all of the District Court's findings of fact.

B.

Determining whether a state actor is entitled to qualified immunity involves a two-step inquiry. "First, we ask whether the facts — taken in the light most favorable to the nonmoving party — show that a government official violated a constitutional right. Second, we ask whether that right was clearly established at the time of the official's actions." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (citation omitted). A law enforcement official does not violate the Constitution where the officer's use of force was objectively reasonable, id., and only "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right,'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Where a plaintiff alleges multiple instances of police misconduct, a reviewing court may not consider the entire course of conduct at once, but rather "the objective reasonableness analysis must be conducted separately for each . . . seizure that is alleged to be unconstitutional." County of Los Angeles v. Mendez, 137 S. Ct. 1539,

6

1547 (2017). And, for the purposes of assessing an officer's involvement in each allegedly unreasonable seizure — and that officer's entitlement to qualified immunity in regards thereto — a court must separately consider the conduct of each officer in light of the knowledge available to them at the time of each alleged act. See Davenport v. Borough of Homestead, 870 F.3d 273, 280 (3d Cir. 2017); see also White v. Pauly, 137 S. Ct. 548, 550, 552–53 (2017) (explaining that "the Court considers only the facts that were knowable to the defendant officers," and considering separately the conduct of officers who arrived on the scene at different times).

The District Court determined that, viewed in the light most favorable to Williams, "a reasonable factfinder could find that Mr. Williams' constitutional rights were violated by both the entry into his home and his subsequent deadly shooting," Appendix ("App.") 32, and continued throughout its opinion to consider the reasonableness of the entire episode together when determining the constitutionality of all the officers' conduct. By arranging its Fourth Amendment analysis in this way, the District Court left unclear which facts it determined to be material to each alleged unconstitutional act, and further — with the exception of the lethal force claim — what role it determined each officer to have played with respect to each alleged violation.[2] Given the lack of clarity regarding

_____

[2] For instance, of the "approximately ten officers" whom the District Court concluded "stormed" Williams' house and engaged in all the subsequent conduct, only six (Kreig, Miller, Roberts, Olszewski, Hardy, and Papi) participated in the initial front-door entry, App. 2679; at most five exerted force to open the bedroom door (Roberts, Papi, Hardy, and maybe Kreig and Ely), id. 20, 2680–83; three shot Williams with a Taser (Kreig, Hardy, and Ely; conduct that is not alleged to be unconstitutional), id. 19, 2686; and one (Papi) used lethal force, id. 20. To the extent, then, that the initial entry standing alone would not have violated Williams' constitutional rights, Officers Miller

7

which genuinely disputed facts the District Court considered material to each alleged violation, the defendants' acceptance of the District Court's factual determinations is of no help to them in overcoming Johnson's jurisdictional hurdle, because we are nevertheless left in the position of blindly attempting to discern "the existence, or nonexistence, of a triable issue of fact" upon which we could render a legal opinion. Johnson, 515 U.S. at 316.

But even if we were inclined — or able — "to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed," id. at 319, it is not true that the defendants actually accept all of the District Court's factual conclusions. Crucially, although the defendants note that the District Court found disputed whether Williams was wielding the poker in a defensive or offensive manner prior to the shooting, they insisted at oral argument that the officers nevertheless reasonably perceived Williams' conduct as offensive. Considering that the only relevant perspective for the purposes of the Fourth Amendment analysis is that of a reasonable officer, see, e.g., Santini, 795 F.3d at 417, this is a dispute regarding perhaps the central fact in this case and one upon which the determination of qualified immunity might turn. Because the defendants ask this Court to second-guess whether the District Court "correctly identified the set of facts that the summary judgment record is sufficient to prove" when it found Williams' intent with regard to the poker to be a disputed fact, Ziccardi v. City of Philadelphia, 288 F.3d 57, 61 (3d Cir.

---

and Olszewski might not have personally engaged in any unconstitutional conduct and so (aside from supervisory liability) might not be liable under § 1983.

2002), we lack jurisdiction to decide whether Williams' constitutional rights were violated or whether the defendants are entitled to qualified immunity.[3]

The same is not true, however, with regard to the supervisory liability claims against Chiefs Fisher and Kreig. There is no dispute about the involvement of these supervisors in the disputed underlying conduct. We are thus faced with a pure question of law regarding whether the supervisors were sufficiently involved in the alleged conduct such that they can be held liable for their subordinates' actions. See id. ("[W]e possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right.").

## III.

This Court has noted that there exists "uncertainty as to the viability and scope of supervisory liability" after the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), arguably narrowed or abrogated the ability to find a supervisor liable for conduct of which he was merely aware but did not direct. Santiago v. Warminster Twp., 629 F.3d 121, 130 n.8 (3d Cir. 2010). Although we have not yet squarely addressed the extent of Iqbal's impact on the theory of supervisory liability, we have repeatedly held that "[i]t is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 71 (3d Cir. 2011). Such personal involvement may be established by alleging that the

---

[3] We do so without prejudice to the defendants moving again in the District Court in order to obtain a more fully developed record.

supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).[4]

The District Court concluded that Chiefs Fisher, Ely, Kreig, and Olszewski, and Corporal Miller (as the ranking officer on site) could be held liable as supervisors "who were either present at the scene of the incident or directly participated in the events," and that disputes of fact precluded granting them qualified immunity. App. 41. In reaching this determination, the District Court did not separately consider each supervisor's circumstances or the extent of each's personal involvement in the alleged conduct.

This lapse is particularly notable concerning Chiefs Kreig and Fisher. Although Kreig was personally involved in various alleged violations, he was the only Meshoppen Borough officer on the scene, meaning he had no subordinates for whose conduct he could be held liable. Thus, to the extent that he was found liable as a supervisor for his own participation in the alleged violations, that is redundant of his individual liability, and he is entitled to summary judgment on this claim. Regarding Fisher, it is undisputed that he was off duty, did not come to scene, and did not direct, condone, or have awareness of the conduct that occurred. Fisher's generalized knowledge that the situation was unfolding is too slender a reed upon which to hold him liable for the conduct of his

---

[4] As in our prior cases, we need not decide whether the knowledge and acquiescence theory survives Iqbal, because for those officers over whom we have jurisdiction, Mrs. Williams' claims fail even under that theory.

10

on-site subordinates.  See, e.g., Santiago, 629 F.3d at 134 (rejecting knowledge and acquiescence claim against supervisor not alleged to have knowledge of the excessive force); Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (affirming grant of summary judgement for supervisor who was "kept abreast" of an investigation, but did not direct his subordinate "to take or not to take any particular action").  We reject Mrs. Williams' theory that Fisher can be held liable based solely on his failure to come to the scene, thereby leaving Miller in charge even though he was allegedly unprepared to handle the situation.  To the extent that such a basis for liability exists and survived Iqbal, it is certainly not clearly established that the mere failure to show up at a scene when off duty could render a supervisor liable for his subordinates' unconstitutional conduct, and Mrs. Williams has failed to cite any case law in support of the proposition.  Fisher is thus entitled to qualified immunity.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (holding that courts may grant qualified immunity where the right is not clearly established without first deciding whether the right exists).

Regarding Chief Ely, Chief Olszewski, and Corporal Miller, we dismiss for lack of jurisdiction for the same reason as described above, because their potential supervisory liability depends on the same insufficiently developed factual determinations.

IV.

For the foregoing reasons, we will dismiss the appeal in part and reverse the District Court's opinion in part.

11