

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-1997

# Rogers v. Powell

Precedential or Non-Precedential:

Docket 96-7299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Rogers v. Powell" (1997). *1997 Decisions*. Paper 186.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 11, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7299

ROBERT EUGENE ROGERS,

Appellant

v.

OFFICER KEVIN POWELL; OFFICER JEFFREY STINE,
a/k/a Stiney; OFFICER TIMOTHY EILER;
OFFICER JAMES EDWARDS,

Appellees

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 95-cv-01204)

Argued: January 28, 1997

Before: BECKER, ROTH, Circuit Judges, and
ORLOFSKY, District Judge.*

(Filed August 11, 1997)

DONALD A. BAILEY, ESQUIRE
  (ARGUED)
3540 Progress Avenue, Suite 209
Harrisburg, PA 17110

Attorney for Appellant

_____

* Honorable Stephen M. Orlofsky, United States District Judge for the
District of New Jersey, sitting by designation.

THOMAS W. CORBETT, JR.,
 ESQUIRE
Attorney General
JACQUELINE E. JACKSON-
 DEGARCIA, ESQUIRE (ARGUED)
Deputy Attorney General
CALVIN R. KOONS, ESQUIRE
Senior Deputy Attorney General
JOHN G. KNORR, III, ESQUIRE
Chief Deputy Attorney General

Office of Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA 17120

Attorneys for Appellees

**OPINION OF THE COURT**

CKER, Circuit Judge.

This is an appeal by plaintiff Robert Rogers from a district court final judgment in a civil rights action, 42 U.S.C. § 1983, in favor of four Pennsylvania state police troopers who Rogers claims violated his civil rights by arresting him without probable cause and by using excessive force in connection with the arrest. The unlawful arrest claim was disposed of by summary judgment. The excessive force claim was tried to a jury which found for the defendants. We find no error in connection with the trial, and affirm summarily with respect to the excessive force claim. However, we find the existence of a triable fact with respect to aspects of the unlawful arrest claim against some of the defendants.

More specifically, we conclude that the information received by Trooper James Edwards from Probation Officer Rita Miller about the supposed existence of an arrest warrant for Rogers was too insubstantial to justify detaining him. Moreover, because Edwards' reliance on the vague and inconclusive statements of a parole officer was not reasonable, he was not entitled to qualified immunity.

2

**Thus, we reverse the grant of summary judgment as to Edwards. With respect to Trooper Timothy Eiler, who arrested Rogers along with Edwards based on Edwards' representation that there was a valid arrest warrant, we affirm the grant of summary judgment on the grounds that he is properly held entitled to qualified immunity.**

**We also conclude that Troopers Jeffrey Stine and Kevin Powell, whose detention of Rogers was also based on Edwards' representation, are entitled to qualified immunity, but only up to the point at which they were informed that there was no reason to hold Rogers in custody. Their qualified immunity disappeared when they continued to detain him for approximately one hour thereafter. We therefore affirm in part and reverse in part with respect to Stine and Powell.**

## I. Facts and Procedural History

On September 25, 1994, Troopers James Edwards and Timothy Eiler were working the midnight shift in Clinton County, Pennsylvania.1 Edwards was assigned to the desk while Eiler was on patrol with Trooper Dale Gillette. Prior to starting his shift, Edwards claims that he had spoken with Trooper Davy. During this conversation, Davy allegedly mentioned that there was a "court paper out on Rogers." The record, however, is devoid of any declaration or deposition by Davy, so we cannot confirm exactly what he said to Edwards.

Later that evening Edwards received a report of a fight in nearby Logantown in which Rogers was allegedly involved. Edwards dispatched Eiler and Gillette to the scene of the fight. When they arrived, Rogers was not present. Eiler and Gillette then began to search for him. At this point, because of Edwards' earlier conversation with Davy, as well as Rogers' alleged involvement in the Logantown fight, Edwards decided to determine if any warrants were pending for Rogers.

Following Pennsylvania State Police procedure, Edwards contacted the Clinton County Communications Center

---

1. The "midnight shift" began at 11 P.M. on September 25, and ended at 7 A.M. on September 26.

which informed him that there were two summary warrants pending for Rogers. Additionally, Edwards said he was informed that there might be other "open" paperwork on Rogers from the Clinton County Probation Office. As a result, Edwards called the probation office and requested that the officer on duty that evening contact him. Edwards then contacted Eiler and Gillette and told them not to pick up Rogers if they found him because the only warrants of whose existence Edwards knew were summary warrants. When an individual is arrested for outstanding summary offense warrants, he must be taken to appear before the proper issuing authority "without delay." Pa. R. Cr. P. 76(b)(4). Therefore, officers typically do not arrest an individual during the late evening or early morning hours for outstanding summary offense warrants because they are reluctant to awaken the district justice on duty.

Later that night, Rita Miller, from the Clinton County Probation Office responded to Edwards' call. She too advised Edwards of the two summary warrants. Miller also stated that Trooper Davy wanted Rogers "because he [Davy] said that Lycoming County said that they'll hold him as an absconding witness."[2] Edwards maintains that this statement gave him the belief that there was a warrant for Rogers' arrest in Lycoming County.

A transcript of the conversation between Edwards and Miller, prepared by police communications officer Ruth Eoute at the request of Sergeant Salinas of the Pennsylvania State Police, the accuracy of which is not disputed by any of the parties, supports Miller's claim that she never confirmed the existence of a warrant for Rogers' arrest in Lycoming County:

Edwards:   State Police, Tpr. Edwards.

Miller:    Hi, it's Rita Miller.

Edwards:   Rita?

Miller:    Yeah.

_____

2. See 18 Pa. Cons. Stat. Ann. § 5125 (West 1983) (dealing with "absconding witnesses" and defining the offense as a misdemeanor of the third degree).

4

```
Edwards:    Do you want Robert Rogers?

Miller:     There's a warrant out for him. It's a
            summary warrant. Davy wants him.
            Because he says that Lycoming County
            said that they'll have him as an
            absconding witness.

Edwards:    Who will? Lycoming County?

Miller:     Yeah. Because he's to testify against
            Doctor Bender in the hearing.

Edwards:    Mm Hm.

Miller:     Okay. And also I think there's two
            warrants out from Lycoming County.3 I
            think they're both from Frazier's office.
            One's for Hit and Run over at (inaudible)
            and one's for assaulting that guy and they
            charged him with harassment. So he has
            two summary warrants. Do you have
            them? Copies of the warrants.

Edwards:    No. The Comm. Center does.

Miller:     Okay. No. I don't have him on any more
            because they left him off of probation after
            giving him that deal. You know, if he would
            testify?

Edwards:    Yeah.

Miller:     So I don't have anything on him any more.
            Do you guys have him?

Edwards:    No. He's with Mike Marshall tonight and
            Gilly Stevenson and they're causing some
            shit.
```
_____

3. In her sworn deposition, Miller stated that she misspoke at this point in the conversation with Edwards. Frazier is a district justice in Clinton County, so it seems clear from the context of the conversation that Miller intended to say "there's two warrants out from Clinton County" when in fact she said "there's two warrants out from Lycoming County." We conclude from Edwards' response that he, too, understood that Miller meant to refer to Clinton County, rather that Lycoming County at this point in the conversation. (Appellees' Supplemental Appendix, p. 169).

Miller: Mm Hm.

Edwards: So, uh, the one guy that was out on the road (inaudible)

Miller: Mm Hm.

Edwards: So they went to look to get him again and he had left. So they're going down to a place in Flemington to see if they're down there.

Miller: Okay.

Edwards: So then if they get him, definitely pick him up. Yes?

Miller: Yeah. They can pick him up on the warrants and then they can let Lycoming County know and they were going to put like high bail on him to hold him so that he'd be able to testify at the trial.

Edwards: Okay. If we're going to pick him up for the warrants, what are we to do, take him to Lycoming County or take him here?

Miller: You better bring him here. And then get ahold of Trooper Davy and let him get ahold of Lycoming County and let them know. Because he said (inaudible), Davy did.

Edwards: This is Bob Rogers the third?

Miller: Yep.

Edwards: Okay. Okay.

Miller: Okay?

Edwards: Go back to sleep.

Miller: Thanks.

Edwards: Bye.

Miller: Bye.

After this conversation, Edwards radioed Gillette and Eiler and told them that if they found Rogers, they should arrest him. Gillette and Eiler did not locate Rogers that evening.

The following evening, Edwards, Eiler, and Gillette were again working the midnight shift. This time Edwards and Eiler were on patrol and Gillette was on desk duty. At approximately 2:40 A.M., Gillette dispatched Eiler and Edwards to Dr. Barry Bender's residence. When they arrived at the residence, Bender informed the two troopers that they were not needed. Edwards and Eiler left, but returned within twenty minutes after Gillette again dispatched them to Bender's residence because Rogers was creating a disturbance inside Bender's house. After receiving consent to enter, Edwards and Eiler arrested Rogers inside. When Rogers demanded to see the warrant for his arrest, Edwards replied that he did not have the warrant and that Rogers would see it when he arrived at the Montoursville State Police Barracks in Lycoming County. Edwards and Eiler left Bender's residence with Rogers at 3:19 A.M.

While en route to Lycoming County, Edwards contacted Gillette and requested that Gillette arrange for a patrol car to meet them at the Clinton/Lycoming County line. Gillette then contacted the dispatch officer in Lycoming County, Police Communications Officer James Pfleegor, to request that he send a patrol car to the county line. Gillette informed Pfleegor that Rogers was being transferred to their custody because there was an outstanding warrant or detainer waiting for him at Lycoming County Prison. At approximately 3:54 A.M., Pfleegor dispatched Troopers Stine and Powell to the county line to transport Rogers to Lycoming County Prison. Edwards and Eiler took Rogers to the county line and transferred him to the custody of Stine and Powell. Stine and Powell did not personally know Edwards or Eiler, or know of Rogers before this transfer. When Stine and Powell took Rogers into their custody, they noticed that he was belligerent and appeared to be intoxicated.

While en route to the Lycoming County Prison, Stine and Powell radioed Pfleegor and requested that he notify the prison that they would be arriving shortly with Rogers and that the prison should begin to prepare any necessary paperwork. Pfleegor radioed back a short time later and informed Stine and Powell that the prison could not locate

an outstanding warrant or detainer for Rogers' arrest. According to Stine and Powell, they did not immediately release Rogers after receiving Pfleegor's message because they were unclear as to whether an outstanding warrant or detainer for Rogers' arrest existed. Instead, they drove to the Montoursville Barracks to clarify the situation.

Once they reached the barracks, both troopers took Rogers upstairs to the patrol room. It was at this point that the incident occurred between Stine and Rogers giving rise to the excessive force claim. Stine then sat Rogers into a chair, placed handcuffs on him, and connected him to a chain on the floor. Rogers fell asleep.

While Rogers was sleeping, Powell spoke with Nancy Butts, an assistant district attorney of Lycoming County. Butts advised Powell that there was no outstanding bench warrant or detainer for Rogers' arrest in Lycoming County and that since they had no reason to hold Rogers they should release him and transport him back to the county line.

At some point after 5:45 A.M., notwithstanding Butt's advice, Powell and Stine transported Rogers in handcuffs back to the county line. Edwards, Eiler, and Davy met Stine and Powell at the county line. Rogers remained in handcuffs until he was released back to Edwards, Eiler, and Davy at approximately 6:04 A.M. Rogers was finally dropped off, at his request, at the Dunkin Donuts in Lock Haven, Clinton County at approximately 6:25 A.M.

Rogers brought suit against Powell, Stine, Eiler, and Edwards pursuant to § 1983, alleging that the officers violated his right to be free from unlawful seizures under the Fourth and Fourteenth Amendments.4  The defendants

_____

4. In addition to his unlawful seizure claims against all four defendants, Rogers brought two claims solely against Stine. First, Rogers brought a § 1983 claim against Stine arising out of an incident at the Montoursville Barracks alleging that Stine violated his right to be free from excessive force under the Fourth and Fourteenth Amendments. Stine moved for summary judgment as to this excessive force claim, but the District Court denied Stine's motion. The claim went to trial and the jury entered a verdict in favor of Stine. Rogers asserts that the district court erred in

8

moved for summary judgment on the grounds that no genuine issue of material fact existed with respect to the issue of whether the troopers had probable cause to arrest Rogers without a warrant. The district court agreed, and granted the defendants' motion.

The district court properly exercised its jurisdiction pursuant to 28 U.S.C. § 1331; we exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's grant of summary judgment is plenary. Ersek v. Township of Springfield, 102 F.3d 79, 83 (3d Cir. 1996).

**II. The Unlawful Arrest Claim**

We begin our inquiry by examining the question whether the arrest of Rogers was unlawful and thus violated his Fourth Amendment right to be free from an unlawful seizure. That the defendants may have violated the Fourth Amendment does not end our inquiry, however. They will be liable for damages only if the doctrine of qualified immunity does not protect them.

A. The Applicable Rules

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156 (1972)). In Pennsylvania, "[n]o arrest warrant shall issue but upon probable cause . . ." Pa. R. Cr. Pr. 119. The gravamen of Rogers' claim is that he was arrested without the requisite probable cause. The crux of the defendants' argument is that Edwards' mistaken belief that an arrest warrant had issued for Rogers supplied the probable cause required by the Fourth Amendment.

---

refusing to allow him to offer evidence during the trial that he suffered some type of injury or damage during the incident. We find this claim patently without merit.

Rogers also brought a pendent state law assault claim against Trooper Stine. The district court granted Stine's motion for summary judgment as to this claim on sovereign immunity grounds. Rogers did not appeal this ruling.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483. The district court found that no genuine issue of material fact existed with respect to whether the officers had probable cause to arrest Rogers without a warrant because Edwards' conversations with Davy and Miller supplied him with the "facts and circumstances" necessary to support his finding of probable cause to arrest Rogers.

The district court's conclusion was legally erroneous because statements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the "facts and circumstances" necessary to support a finding of probable cause. Whitely v. Warden, 401 U.S. 560, 568 (1971) ("[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."). Probable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard. In United States v. Hensley, 469 U.S. 221 (1985) the Court held that the lawfulness of a seizure made in reliance on the statements of fellow officers

turns on whether the officers who issued the [statements] possessed probable cause to make the arrest. It does not turn on whether those relying on the [statements] were themselves aware of the specific facts which led their colleagues to seek their assistance.

Id. at 231.

Thus, the required basis for a lawful seizure where police rely on the statements of fellow officers is as follows. The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect. Id. at 231. Moreover, an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis. Id. at 232.

10

We now apply these teachings to the facts to determine whether Rogers' Fourth Amendment rights were violated as a result of his arrest.

B. Lawfulness of the Arrest in this Case

We conclude that the arrest of Rogers was unlawful. Edwards had no knowledge of any facts or circumstances to support his own independent determination that probable cause to arrest Rogers existed.5 He relied solely on the statements made by Davy and Miller in arresting Rogers. However, it is clear that neither Davy nor Miller had knowledge of the requisite facts and circumstances necessary to support a finding of probable cause to arrest Rogers.

Edwards arrested Rogers on the basis of the supposed Lycoming County arrest warrants. The undisputed facts make clear that no warrant existed in Lycoming County for Rogers' arrest. Miller did not confirm the existence of any Lycoming County warrants. Miller did nothing more than relate her awareness of rumors that were circulating about the possibility that an arrest warrant had issued, or was going to issue for Rogers in Lycoming County.6 At one

_____

5. We reject the appellee's suggestion that because Edwards could have lawfully arrested Rogers on the basis of two outstanding summary warrants in Clinton County, he possessed the requisite probable cause. It is clear from Edwards' signed declaration and the circumstances of Rogers' arrest that the summary warrants were not the basis for the arrest.

We acknowledge that an arrest is not rendered invalid by the fact that the basis for the arrest, though legitimate, was merely pretextual. See Whren v. United States, 116 S. Ct. 1769, 1774 (1996). In other words, had Edwards actually arrested Rogers on the basis of the summary warrants, even though he had subjectively arrested Rogers based on a non-existing Lycoming County warrant, he might have had the requisite probable cause. However, Edwards did not articulate the legitimate basis for the arrest (the Clinton County summary warrants) at the time of the seizure, nor did he advance it as a justification for the arrest at any point in the proceedings prior to this appeal. Although we do not reach the issue, we would be troubled by an argument suggesting that a legitimate basis for an arrest identified only after the arrest would provide sufficient grounds therefor.

6. The only clear statement Miller made to Edwards concerning the existence of arrest warrants for Rogers referred to the Clinton County summary warrants, but those warrants were not the basis for Rogers' arrest.

11

point, she said "So I don't have anything on him anymore." There is no information in the record about Davy's communication with Edwards, except that Miller said that Davy said that Lycoming County said that they'll have him as an absconding witness. That is "thin soup", as the old saying goes. Therefore, Edwards relied solely on his fellow officers' statements in arresting Rogers on the basis of a Lycoming County arrest warrant, and none of those officers had knowledge of facts and circumstances to support an independent finding of probable cause.

Eiler, Stine, and Powell, like Edwards, had no knowledge of facts or circumstances sufficient to support an independent determination of probable cause to arrest Rogers; all of them relied on the statements of others. Eiler, Stine, and Powell relied solely on the statements of Edwards in determining that there was probable cause. Although there will be differences when we address the question of qualified immunity, at this juncture the significant question remains the same: did the officer making the statements (in this case Edwards) have knowledge of facts and circumstances sufficient to warrant a conclusion of probable cause? As we have already concluded, the answer is no. Thus, under Whitely and Hensley, Eiler, Stine, and Powell, like Edwards, did not have probable cause to arrest Rogers, and as a result, the arrest was unlawful and violated Rogers' Fourth Amendment right to be free from unlawful seizures.

## III. Qualified Immunity

### A. The Applicable Rules

Despite unlawfully arresting Rogers and violating his Fourth Amendment rights, the defendants may still be shielded from civil liability by the doctrine of qualified immunity.7 The doctrine of qualified immunity protects "government officials performing discretionary functions . . .

_____

7. The district court never reached the qualified immunity question because it determined that the officers had lawfully arrested Rogers. However, since the qualified immunity issue is primarily a question of law and was raised by the defendants in both their motions for summary judgment and their appeal, we will address the issue.

12

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The reasoning behind the doctrine is that "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruptions of government and permit the resolution of many insubstantial claims on summary judgment." Id. (footnote omitted).

Whether a government official is entitled to protection under the doctrine of qualified immunity is a "purely legal question." Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir. 1994). The appropriate inquiry is as follows:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

Harlow, 457 U.S. at 818–19. Moreover, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The closest case to the one at bar is Capone v. Marinelli, 868 F.2d 102 (3d Cir. 1989). In Capone, a police officer took an affidavit alleging probable cause for arrest based on criminal conduct attributed to Capone. Id. at 103. An arrest warrant was issued, the details of which were entered into the National Crime Information Center computer system which sent out an electronically transmitted bulletin across the country. Id. The bulletin clearly stated that Capone was wanted for kidnapping and other offenses, and that a warrant had been issued for his arrest. Id. Two days later

13

a police officer from a different Pennsylvania county arrested Capone in reliance on that bulletin. Id.

We granted summary judgment in favor of the officers, holding that a "police officer who reasonably relies upon a bulletin that establishes the existence of a warrant for arrest is entitled to qualified immunity in a civil rights action brought against him for unlawful arrest and

prosecution." Id. at 104. Our decision relied heavily on the dicta in Whitely and Hensley. In Whitely, the Court stated:

We do not, of course, question that the . . . police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.

401 U.S. at 568.

In Hensley, the Court wrote:

If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit. It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it.

469 U.S. 232-33 (emphasis added). Thus we concluded in Capone:

Given that the . . . bulletin expressly states that a warrant existed for the arrest of Capone, as well as the nature of the alleged offenses . . . [the] officer['s] reliance upon the bulletin cannot be said to have been unreasonable. Therefore, as a matter of law, the protection of qualified immunity . . . extends to[the officer].

868 F.2d at 106. These cases teach us that the actions of a police officer acting in reliance on what proves to be the flawed conclusions of a fellow police officer may be

14

reasonable nonetheless and thus protected by the doctrine of qualified immunity.

Although Capone dealt with the objective reading of a written flyer or bulletin, we see no reason why the same analysis should not be used in considering oral statements. Therefore, we hold that where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed.

B. Immunity in this Case

1. Edwards

Edwards acted in reliance on statements made by Davy and Miller concerning the existence of an outstanding arrest warrant for Rogers in Lycoming County. The relevant question is whether it was objectively reasonable for him to believe, on the basis of the statements, that probable cause existed for the arrest. Unlike the officers in Capone, Edwards never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause for the suspect's arrest. The content of the statements made by Davy and Miller merely related rumors that were circulating about Rogers. The statements never confirmed the existence of an arrest warrant for Rogers in Lycoming County. Statements made by Miller regarding the existence of summary warrants in Clinton County were sufficiently clear; however those statements are not relevant since the summary warrants were not the basis for Edwards' arrest of Rogers.

Given the facts before us and in the absence of any statement confirming the existence of probable cause or a warrant itself, we do not believe that Edwards' reliance on the statements was reasonable. Thus, as a matter of law it was not objectively reasonable for Edwards to believe that probable cause existed for the arrest and hence Edwards is not protected against Rogers' § 1983 claim by the doctrine of qualified immunity. Accordingly, we will reverse the

15

district court's order granting summary judgment as to Edwards.[8]

## 2. Eiler

Eiler acted in reliance on the statements of Edwards. Unlike the vague statements of Davy and Miller, the statements made by Edwards to the other troopers involved were clear, and unambiguously related the existence of an arrest warrant for Rogers in Lycoming County. The circumstances surrounding Eiler's participation in Rogers' arrest are very similar to the circumstances in Capone and as a matter of law we find that it was objectively reasonable for Eiler to believe that probable cause existed for the arrest.

Although the district court wrongly granted summary judgment as to Eiler on the basis of a finding of probable cause for the arrest, we will affirm the order on the alternative grounds that having participated in the unlawful arrest of Rogers, Eiler is nonetheless shielded from civil liability for the § 1983 claim by the doctrine of qualified immunity. See Williams v. Stone, 109 F.3d 890, 891 (3d Cir. 1997) (affirming the judgment of the district court, although on different grounds than those relied upon by the district court).

## 3. Powell and Stine

Our holding as to Eiler largely controls our analysis of qualified immunity for Powell and Stine. Powell and Stine acted on the basis of the statements made by Edwards and conveyed by the Lycoming County dispatcher Pfleegor, stating that Rogers needed to be transported to the

_____

8. Despite our conclusions that the arrest of Rogers was unlawful and that Edwards is not shielded from liability by the doctrine of qualified immunity, we do not enter summary judgment for Rogers. The district court never ruled on Rogers' motion for summary judgment, and hence Rogers was not able to appeal the issue to this court. We recognize precedent which, broadly construed, suggests that we could appropriately enter summary judgment for Rogers in this instance. See Schmidt v. Farm Credit Services, 977 F.2d 511, 513 n.3 (10th Cir. 1992). However we decline to do so and instead remand the matter to the district court for decision in the first instance.

16

Lycoming County Prison pursuant to an arrest warrant. It was objectively reasonable for Powell and Stine to believe, on the basis of those statements, that probable cause existed for the arrest of Rogers. Thus, for the initial period of time that Powell and Stine held Rogers, they are protected from Rogers' § 1983 claim by the doctrine of qualified immunity.

Powell and Stine do not enjoy qualified immunity, however, beyond the time at which assistant district attorney Butts communicated to them that there was no reason to hold Rogers in custody. Continuing to hold an individual in handcuffs once it has been determined that there was no lawful basis for the initial seizure is unlawful within the meaning of the Fourth Amendment. See United States v. Shareef, 100 F.3d 1491, 1507 (10th Cir. 1996). Of course, we recognize the possibility of some additional basis, independent of that claimed to support the initial seizure, that could support an official continuing to hold an individual in handcuffs. However, no such basis exists here.9 As noted, Powell and Stine failed to remove the handcuffs from Rogers when they learned from their conversation with Butts that there was no basis for holding him, but rather detained him for an additional period time. For this reason they are not immunized from a § 1983 claim by Rogers regarding this final interval of time. Accordingly, we affirm in part and reverse in part the district court's order granting summary judgment as to Powell and Stine. The precise length of the additional holding period cannot be determined from the evidence contained in the record and will have to be decided on remand.

## IV. Conclusion

For the foregoing reasons the district court's grant of summary judgment in favor of Eiler will be affirmed. The court's order granting summary judgment as to Edwards

_____

9. Even assuming, without so holding, that the officers might have been justified in leaving the handcuffs on Rogers while transporting him to Clinton County had Rogers' behavior posed a threat of some kind during that time, there is nothing in the record to indicate that Rogers posed such a threat, nor did the appellees raise such an argument in these proceedings.

17

will be reversed. The grant of summary judgment as to Powell and Stine will be affirmed in part but also reversed in part, and the cases against Edwards, Powell, and Stine will be remanded to the district court for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

18