NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4610

_____

MAURA CIARDIELLO; ROBERT CIARDIELLO, married

v.

STEPHEN SEXTON,
individually and in his official capacity;
NEW JERSEY STATE POLICE ;
STATE OF NEW JERSEY
DEPARTMENT OF HUMAN SERVICES;
JOHN DOES 1-5;
TOWNSHIP OF WOODBRIDGE;
FRANCIS GAGNON,
individually and in his official capacity;
CHIEF RAYMOND BRENNAN.

Francis Gagnon,
individually and in his official capacity;
Township of Woodbridge,

Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-06-cv-04007)
District Judge: Honorable William J. Martini

_____

Argued July 14, 2010

Before: RENDELL, JORDAN and GREENAWAY, JR., Circuit Judges.

(Filed    August 13, 2010  )

Ronald A. Berutti, Esq.   **[ARGUED]**
Weiner Lesniak
629 Parsippany Road
P.O. Box 438
Parsippany, NJ 07054

   *Counsel for Appellants*
   *Francis Gagnon, individually and in his official capacity;*
   *Township of Woodbridge.*


Kathleen C. Goger, Esq.   **[ARGUED]**
Singer and Roger
35 West Main Street,  Suite 106
Denville, NJ 07834

   *Counsel for Appellees*
   *Maura Ciardiello, Robert Ciardiello*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

After being arrested in Woodbridge, New Jersey, plaintiff Maura Ciardiello brought suit under 42 U.S.C. § 1983 and New Jersey state law against Officer Stephen Sexton, Officer Francis Gagnon, and Gagnon's employer, the Township of Woodbridge. Defendants moved for summary judgment, which the District Court granted in part and denied in part. Gagnon and the Township of Woodbridge have filed an interlocutory appeal, arguing that the District Court erred by denying them qualified immunity and by

failing to dismiss plaintiffs' state law claims pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 to 59:1-7. We will affirm the District Court's order as to the qualified immunity issue, and will dismiss the appeal as to the Tort Claims Act issue.

I.

The events giving rise to this suit occurred on August 21, 2005, in the parking lot of a Shop-Rite supermarket in Woodbridge, New Jersey. Sexton, a police officer with New Jersey's Department of Human Services who was off duty and in plain clothes at the time of the incident, discovered that Ciardiello had left her dog alone in her parked vehicle. Sexton claims that it was a very hot afternoon and that the dog appeared to be in distress, although Ciardiello contends that she had used the air conditioner to cool the vehicle before going to the store and that she had left all of the windows slightly open. When no one returned to the vehicle after several minutes, Sexton called 911 to report that a dog had been left unattended. He then waited by Ciardiello's vehicle for her to return, and for the police to arrive.

When Ciardiello returned to her vehicle, Sexton confronted her. He did not initially identify himself as a police officer, and after a verbal exchange, Ciardiello entered her vehicle and prepared to leave. Sexton claims that, at around this time, he identified himself as a police officer and showed Ciardiello his badge and police identification; Ciardiello testified that Sexton displayed his identification for such a short period of time that she was unable to confirm that he was showing her a badge.

3

Ciardiello closed the door, but before she had a chance to lock it, Sexton opened the door and forcefully removed Ciardiello from the vehicle. Although Ciardiello was screaming and struggling, Sexton was able to pin her against the outside of the vehicle. He testified that, after restraining Ciardiello against her vehicle, he held his badge in the air to show the gathering crowd that he was a police officer.

Officer Gagnon was dispatched to respond to Sexton's 911 call. He testified that he was initially dispatched to respond to a "lock-out" call—that is, he was informed that "[s]omebody got locked out of their car . . . or locked something in their car." JA140. However, he claims that while he was en route to the Shop-Rite, the call "was upgraded from a lock-out to assist officer." JA141. Ciardiello disputes this; she asserts that, according to a recording of the communications between Gagnon and the dispatcher, the call was never upgraded to an "assist officer" call.

Upon arriving in the parking lot, Gagnon says he noticed "a commotion," and someone's "arm . . . holding a badge and ID" into the air. JA142-43. Sexton, however, testified that he had put the badge back in his pocket "[w]ell before" Gagnon arrived. JA79. Gagnon testified that Sexton "had [Ciardiello] up against the car" and was restraining her, such that Ciardiello "wasn't completely subdued but she wasn't fighting with [Sexton]." JA144-45. Sexton agreed that Ciardiello was "no longer struggling" by the time Gagnon arrived. JA79. Ciardiello testified that when Gagnon arrived, she was "completely restrained" against her vehicle by Sexton, was not struggling, and was not

4

free to move. JA104.

There is some uncertainty as to what transpired upon Gagnon's arrival. Gagnon testified that when he exited his police car and approached Sexton, Sexton said, "'She's under arrest, I need you to cuff her,'" and Gagnon "handed [Sexton] my handcuffs." JA144. Gagnon testified that at some point Sexton said that Ciardiello was under arrest for "obstruction," but it is not clear when this statement was made. JA149. Sexton testified both that he told Gagnon that Ciardiello "was under arrest for obstruction," and that he said to Gagnon, "'She's under arrest. I need your handcuffs or cuff her up.'" JA79. Gagnon then gave his handcuffs to Sexton, and Gagnon and Sexton agree that Sexton did not require assistance when he put the handcuffs on Ciardiello. Gagnon said that he heard Sexton "say a couple times 'stop resisting, you're under arrest, this is over,'" JA145, but Ciardiello did not recall Sexton telling her that she was under arrest, and she did not know who had placed the handcuffs on her.

According to Gagnon, Sexton then walked Ciardiello to Gagnon's car and placed her inside it. According to Ciardiello, it was a Woodbridge police officer, rather than Sexton, who escorted her to Gagnon's car. After recovering Ciardiello's dog (who had left the vehicle during the intervening events), Gagnon returned to his car, where Sexton said to him that he would "'meet you at police headquarters.'" JA147. Gagnon testified that he did not have any further discussions with Sexton at the time, did not question any witnesses before leaving the parking lot, and did not speak with Ciardiello while

5

transporting her to the police station. Upon arriving at the police station, Gagnon completed part of an arrest report, including a notation that Ciardiello had been arrested for obstruction, but left portions of the report blank so that Sexton could complete them later.

Ciardiello was charged that day with obstructing "the administration of law or other governmental function," pursuant to § 2C:29-1 of the New Jersey Code of Criminal Justice. She was also charged with animal cruelty and aggravated assault based on subsequent complaints by Sexton. All of the charges were later dismissed.

## II.

Ciardiello subsequently brought this case in the U.S. District Court for the District of New Jersey.[1] She asserted claims under 42 U.S.C. § 1983, apparently against all defendants, based on Sexton's and Gagnon's actions. She also brought a variety of claims under New Jersey state law, including claims of assault, negligence, malicious prosecution against Sexton; claims of false arrest and false imprisonment, infliction of emotional distress, and negligence against all defendants; and negligent training against Woodbridge.[2] She further alleged that the Township of Woodbridge was liable under

---

[1] The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367.

[2] Ciardiello's husband joined in the lawsuit and brought a loss of consortium claim against all defendants.

6

§ 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2.[3]

Defendants moved for summary judgment, which the District Court granted in part and denied in part. The Court determined that the factual disputes regarding Ciardiello's and Sexton's conduct precluded summary judgment on most of the claims arising from her arrest. The Court also denied summary judgment on the negligence claim brought against all defendants.[4] However, the Court granted summary judgment to Woodbridge on the § 1983, New Jersey Civil Rights Act, and negligent training claims, after finding that Ciardiello had not demonstrated the existence of an unconstitutional policy or custom. The Court also granted summary judgment to Woodbridge and Gagnon on the emotional distress claims, because "no reasonable jury could find that Defendant Gagnon's conduct was extreme or outrageous," as would be required to support these claims. JA9. Although Gagnon and Woodbridge argued that Ciardiello's state law claims were barred by the New Jersey Tort Claims Act, the District Court appears not to have addressed this argument. The Court also appears not to have specifically addressed Sexton's claim of qualified immunity.

---

[3] Ciardello also asserted claims against the New Jersey Department of Human Services and State Police based on Sexton's conduct, a negligence claim against Sexton, and unspecified claims against five unnamed defendants, but she withdrew these claims prior to the District Court's summary judgment ruling.

[4] This claim related to the unfortunate death of Ciardiello's dog shortly after the events described above. Ciardiello alleges that defendants failed to adequately secure her dog after she was arrested, which resulted in the dog running into the street and being hit by a car.

This interlocutory appeal primarily concerns the District Court's disposition of Gagnon's motion for summary judgment on the ground of qualified immunity.[5] The Court gave the following account of the five facts that it found were not in dispute:

- Gagnon received a radio call in his car to report to the ShopRite, for what was initially characterized by the dispatcher as a lockout.
- When he drove up to the ShopRite parking lot, Gagnon saw someone in plain clothes, whom he recognized as a former Woodbridge officer, pinning Ciardiello against an SUV.
- After this, Gagnon gave Sexton a pair of handcuffs.
- Someone cuffed Ciardiello.
- Ciardiello was taken to the station.

JA16-17 (citations omitted). The District Court also appears to have recognized that Sexton said to Gagnon, at a minimum, that Ciardiello was under arrest and that Sexton needed Gagnon's handcuffs. However, the Court determined that these facts were not sufficient to find that Gagnon had probable cause to arrest Ciardiello, such that he would be entitled to qualified immunity, for three reasons. First, there was a dispute "as to what Sexton said to Gagnon and when"; thus, the Court could not conclude as a matter of law that it was reasonable for Gagnon to believe that he had probable cause to arrest Ciardiello. JA17. Second, although Gagnon "relie[d] on the 'assist officer' call, allegedly received prior to his arrival on the scene from the police dispatcher, to bolster

_____

[5] Although the District Court did not explicitly address this issue in its opinion regarding the motion for summary judgment, it did address it in detail in denying Gagnon's motion to reconsider.

the . . . probable cause determination," "[t]he existence of this 'assist officer' call . . . is a material fact in dispute." JA18. Third, although Gagnon "point[ed] to his own observations as evincing the reasonableness of his probable cause determination," the Court found that Gagnon could not have directly observed conduct that would give him probable cause to arrest Ciardiello, since, "when Gagnon arrived, the events precipitating Ciardiello's arrest had already occurred." JA18.

The District Court therefore denied Gagnon's claim of qualified immunity. It also rejected Woodbridge's claim of qualified immunity, in part because the Supreme Court held in *Owen v. City of Independence*, 445 U.S. 622 (1980), that municipalities are not entitled to such immunity.

Gagnon and Woodbridge now appeal, arguing that they were entitled to summary judgment on the grounds of both qualified immunity and immunity under the New Jersey Tort Claims Act.

III.

Defendants invoke two sources of jurisdiction for us to hear this appeal, both of which plaintiff contends are inapplicable here.

With respect to the issue of qualified immunity, defendants argue that we have jurisdiction under 28 U.S.C. § 1291, pursuant to the collateral order doctrine. In *Mitchell v. Forsyth*, the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'

9

within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. 511, 530 (1985).

The Supreme Court later clarified that, when a district court finds that a defendant is not entitled to qualified immunity because "the summary judgment record . . . raise[s] a genuine issue of fact concerning" the defendant's conduct, that determination is not subject to interlocutory review. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). That is, "questions about whether or not a record demonstrates a 'genuine' issue of fact for trial" are not appealable under *Mitchell*; rather, the *Mitchell* rule applies only to "interlocutory appeals of 'qualified immunity' matters . . . [that] present[] more abstract issues of law." *Id.* at 316, 317. When the issue is one of law, we must "accept the set of facts that the District Court found to be sufficiently supported," as well as "the District Court's determination of which facts are subject to genuine dispute." *Blaylock v. City of Phila.*, 504 F.3d 405, 409, 411 (3d Cir. 2007). "Once we accept the set of facts that the District Court found to be sufficiently supported, . . . we may review the District Court's conclusion that the defendants would not be immune from liability if those facts were proved at trial." *Id.* at 409. In the context of a false arrest claim, we may review whether "a reasonable officer could have believed that probable cause existed to arrest" the plaintiff, as this "is a question of law that we may properly resolve." *Id.* at 411.

Ciardiello contends that we lack jurisdiction over this appeal because the District Court denied summary judgment after finding that material disputes of fact existed.

10

However, this argument misapprehends the nature of defendants' argument. As we will address in greater detail below, defendants raise an issue of law: they "assert that the disputed facts referenced by the District Court need not be decided in order for [defendants] to be cloaked with qualified immunity," since "the facts that are undisputed satisfy the quality immunity standard." Appellants' Opening Br. at 1. Thus, they do not challenge the District Court's determination of which facts "the summary judgment record is sufficient to prove," *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002), or its determination that "there is a material issue of fact to be determined by the jury," *Barton v. Curtis*, 497 F.3d 331, 336 (3d Cir. 2007). Because the qualified immunity issue in this appeal therefore presents an "abstract issue[] of law" that is subject to interlocutory review, *Johnson*, 515 U.S. at 317, we conclude that we have jurisdiction to consider the issue of qualified immunity.

However, we lack jurisdiction to hear defendants' argument regarding their immunity under the New Jersey Tort Claims Act. Defendants contend that we may exercise "pendent appellate jurisdiction" to hear this argument. This doctrine "allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202-03 (3d Cir. 2001). As we have previously explained, we will only exercise pendent appellate

11

jurisdiction to review orders that are "inextricably intertwined" or to review a "non-appealable order where it is necessary to ensure meaningful review of the appealable order." *Id.* at 203. The issue of whether the Tort Claims Act protects defendants is entirely independent from the issue of whether they are entitled to qualified immunity, and we find that we can provide "meaningful review" of the qualified immunity determination without considering the scope of the Tort Claims Act. We therefore lack jurisdiction over the appeal to the extent that it involves defendants' argument with respect to the Tort Claims Act.

IV.

We apply de novo review to the District Court's denial of summary judgment on qualified immunity grounds, drawing inferences in the light most favorable to the nonmoving party. *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).

The doctrine of qualified immunity allows government officials who are performing discretionary functions to be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when "a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228

12

(1991). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

We have previously considered whether an arresting officer may lawfully arrest an individual based on statements made to him by other officers. In *Rogers v. Powell*, we held that "statements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause." 120 F.3d 446, 453 (3d Cir. 1997). Rather, "[p]robable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." *Id.* Thus, "an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis." *Id.* If the officer making the statement lacked the requisite knowledge to establish probable cause, the arrest is unlawful.

Even where such an arrest is unlawful, however, the arresting officer may be protected by qualified immunity. Specifically, "where a police officer makes an arrest on the basis of oral statements by fellow officers," the arresting officer is entitled to qualified immunity if "it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Id.* at 455. But where the arresting

13

officer "never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause for the suspect's arrest," and instead relied on vague or irrelevant statements by other officers, the arresting officer is not entitled to qualified immunity. *Id.* at 455-56.

The salient question in this case is thus whether Gagnon knew information, based on either his own observations or Sexton's statements to him, that would have given Gagnon an objectively reasonable basis to believe that there was probable cause to arrest Ciardiello. As noted earlier, in analyzing this question we must accept the District Court's determinations of which facts are sufficiently supported by the record and which facts are in dispute. To the extent that facts have been found by the District Court to be in dispute, we cannot rely on them to evaluate Gagnon's claim of immunity.

Gagnon contends that he was entitled to qualified immunity because he "was not apprised of the exact circumstances of the arrest at the time he gave his handcuffs" to Sexton, because of his "reasonable beliefs upon his subsequent arrival on the scene," and because he was not obligated "to interview" Sexton and "make credibility determinations prior to handing him the handcuffs." Appellants' Opening Br. at 11, 12, 15. He supports these arguments using the following set of facts, which he claims to be undisputed: (1) "Officer Gagnon was not present" when Sexton confronted and restrained Ciardiello, JA12; (2) Gagnon's "sensory understanding of the circumstances upon arrival at the scene" showed that Sexton "had arrested plaintiff for obstruction," JA11; (3) Sexton

14

"assert[ed] that Ms. Ciardiello was being arrested for obstruction," JA14; and (4) Gagnon "simply provided his handcuffs in order to complete the arrest, and then routinely transported appellee to police headquarters, processed the arrest, and sought out medical treatment for her rib pain, which was refused," JA15.

These facts, however, are not sufficient to give Gagnon a clear path to immunity. Gagnon is only entitled to immunity if he was aware of facts that would support a reasonable belief that Ciardiello had committed a crime. *Hunter*, 502 U.S. at 228. To the extent that Gagnon relied on Sexton's statements to him, those statements must have been "clear" and sufficiently specific to "confirm[] the existence of probable cause." *Rogers*, 120 F.3d at 455-56. Although we agree that Gagnon was not necessarily required to interrogate Sexton about the details of Ciardiello's conduct, this does not mean that Gagnon had *no* duty to become informed as to the basis for the arrest. He will only be entitled to qualified immunity if he perceived events himself, or received information from Sexton, that would have been construed by a reasonable officer to show that Ciardiello had engaged in a crime.

As the District Court held, however, the undisputed facts in the record do not establish this. To the extent that Gagnon relies on his assertion that he was told by Sexton that Ciardiello was under arrest for "obstruction," that alleged statement is of no use on appeal because the District Court found that there was a genuine dispute about the contents of Sexton's statements to Gagnon, and we lack jurisdiction to review that

15

determination. *Blaylock*, 504 F.3d at 409.[6]  Although it is certainly appropriate for an arresting officer to rely on his own observations to determine that probable cause exists, Gagnon's vague references to his "reasonable beliefs upon . . . arrival" and his "sensory understanding of the circumstances" do not demonstrate that he had probable cause for making this arrest.[7]  Moreover, none of the truly undisputed facts cited by Gagnon—i.e., that Gagnon was not present during Sexton's initial confrontation with Ciardiello, that Gagnon's handcuffs were used to restrain Ciardiello, that Gagnon transported Ciardiello to the police station and processed her arrest, and that he asked a colleague to determine if Ciardiello required medical treatment—are relevant to the probable cause determination. Similarly, the five facts found by the District Court to be undisputed were not sufficient to support a reasonable belief that Ciardiello had committed a crime.  In summary, we note that this is not a situation where, even if we assumed the facts to be precisely as plaintiff contends, Gagnon would be entitled to immunity as a matter of law.  *Cf. McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001).  Rather, the disputed facts are material to the

---

[6] We also note that, contrary to Gagnon's contention, his situation is unlike that of Officers Eiler, Powell, and Stein in *Rogers*, 120 F.3d at 456, all of whom arrested Rogers after being specifically informed by one of their colleagues that he was named in an arrest warrant.  The existence of that warrant would, on its own, have constituted probable cause for the arrest of Rogers.

[7] Indeed, by Gagnon's own admission, with which Sexton and Ciardiello agreed, "there wasn't a struggle going on" between Ciardiello and Sexton by the time that Gagnon arrived, and Sexton did not require assistance in handcuffing Ciardiello.  JA144-45.  This is not to say that it is irrelevant that Gagnon saw someone he knew to be a police officer physically restraining Ciardiello.  The point is that this observation alone does not amount to probable cause.

16

qualified immunity determination.

We therefore agree with the District Court's determination that, at this stage of the case, Gagnon is not entitled to qualified immunity.[8]

V.

We will AFFIRM the order of the District Court with respect to its denial of qualified immunity to Gagnon and Woodbridge, and will otherwise DISMISS the appeal for lack of jurisdiction.

---

[8] Although Woodbridge joins in this appeal, it has presented no arguments independent of those presented on behalf of Gagnon.  This is not surprising, as there is no error in the District Court's determination that, pursuant to *Owen*, 445 U.S. at 657, "municipalities have no immunity from damages liability flowing from their constitutional violations."

17