FISHER, Circuit Judge, concurring.
I join the majority opinion except for Part II.A. There, the majority rules that consent to a search may be revoked, but that Carlton Williams did not do so. I would hold that he did. I am concerned *338 that the majority's ruling erects obstacles that will make it difficult, in the future, for individuals to withdraw consent to police searches. I nevertheless concur in the result because-taking consent out of the equation-there was probable cause to search Williams's car.
I.
I agree with the majority's ruling, joining other Circuits, that consent to search may be revoked. A person may "delimit as he chooses the scope of the search to which he consents," and the scope of the consent is measured by asking, "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno , 500 U.S. 248, 251-52, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).
I also agree with the majority's recounting of the facts, which is largely as follows. Trooper Michael Volk pulled Williams over on the Pennsylvania Turnpike, gave him a warning, told him he was free to go, and then asked if he would consent to a search of his car. Williams signed the proffered consent form. Then, for an hour and ten minutes on a dark winter night, he stood on the side of the highway with a second state trooper, Trooper Vresh, while Trooper Volk searched his car. A third trooper, Trooper Brautigam, also arrived shortly after the stop began.
Williams testified at the suppression hearing that he eventually said, "[Y]ou searched my car three times, now you hold me up and I have to go." United States v. Williams , No. 2:14-cr-30, 2015 WL 5602617, at *6 (W.D. Pa. 2015). The District Court found this testimony "only credible to a degree" because it was not audible on the video from the dashboard-mounted camera in Trooper Volk's cruiser.[1] Id. The District Court does not explain the impact of its assessment that Williams's credibility on this point was less than total. Instead, the opinion simply goes on to note that "there is no evidence that Trooper Volk heard Williams' alleged comments, assuming such were made." Id.
Later in the search, Williams asked for his cell phones, which were in his car. Trooper Brautigam got them and began to read messages on one of the phones. Williams said that the officers could not search his phone without a warrant. When the troopers began to disassemble the stereo speakers in his trunk, Williams protested, "[Y]ou need a warrant to go through my speakers." Id. In the ensuing exchange, Williams said, "I've been out here half an hour, man" (this was an understatement; it had been more than fifty minutes). Id. Finally, Trooper Volk discovered heroin hidden in the parking brake assembly. Id.
I agree with the majority that when Williams said he had been "out [there] half an hour," he could have been expressing impatience rather than withdrawing consent. But I view differently his earlier statement: "[Y]ou searched my car three times [and] y'all got me on the side of this road in the middle of the winter holding me up and I got to go ." Maj. Op. II.A. (emphasis added). I believe that a typical reasonable person would interpret this statement as withdrawing consent to any further search. See *339 Jimeno , 500 U.S. at 251-52, 111 S.Ct. 1801 (asking what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect"). Indeed, it would be difficult to withdraw consent much more clearly, aside from saying, "Stop," or "I no longer consent." As the majority rightly notes, no one should have to say "a special set of words to withdraw consent." Maj. Op. II.A. The majority's holding, though, may render anything short of a "special set of words" insufficient.
My position arguably conflicts with the Eighth Circuit, which ruled that a defendant's "indicat[ion] that he needed to be on his way" did not withdrawal consent to a search. United States v. Ross , 263 F.3d 844, 846 (8th Cir. 2001). Regardless of any conflict, however, I believe that the majority disregards the "reasonableness" that is the "touchstone" of the Fourth Amendment, Brigham City v. Stuart , 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citations omitted), when it requires something more than Williams's simple, direct statement that he needed to go.
The majority supports its holding by saying that Williams knew how to withdraw consent because he "told the troopers that they did not have consent to search his speakers or his cellular phones." Maj. Op. II.A. But Williams did not say that, and the inaccuracy of the majority's paraphrase is consequential. Williams actually said that the troopers needed a warrant to search his speakers and cell phone. He was wrong, so his statements show only that he misunderstood Fourth Amendment law. See California v. Acevedo , 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (generally, search of speakers would be permissible because warrantless search of an automobile encompasses "the containers within it"); Williams , 2015 WL 5602617, at *10 ("Under existing law at the time, Trooper Brautigam was authorized to examine Williams' cell phones."). As a logical matter, Williams's attempt to assert garbled Fourth Amendment "rights" does not bear on whether he knew how to withdraw consent to a search. If anything, his comments show that he lacked an understanding of his rights that would have permitted him to speak with the level of clarity the majority seems to want.
The majority further supports its conclusion by noting that there was no evidence-aside from Williams's own testimony-that Trooper Volk heard his comment, "[Y]ou searched my car three times, now you hold me up and I have to go." I do not believe that Trooper Volk's ability to hear this comment is relevant. As the majority notes, he was assisted by two other troopers. The District Court found, more specifically, that Troopers Vresh and Brautigam arrived partway into the traffic stop, and that "Trooper Volk ... directed [Williams] to wait with Trooper Vresh while Volk searched the vehicle." Id. at *5. The record fully supports this finding, to which I defer. The dash camera video shows Williams walking off camera with Vresh to wait as directed, and then shows Brautigam walking on and off camera, clearly going back and forth between Williams's car and where Williams was standing with Vresh. Because the troopers were working as a team, Williams should have been able to withdraw consent by speaking to any of them. The District Court made no findings with regard to whether Troopers Vresh or Brautigam could hear Williams's comment, but the record shows that they, not Trooper Volk, were the ones in a position to hear Williams.
II.
Despite the fact that I believe Williams withdrew his consent to the search, I would affirm the District Court's denial of *340 the suppression motion because there was probable cause to search Williams's car.
The facts leading up to the Turnpike stop were these. A confidential informant conducted two controlled buys of heroin from Williams in November and December 2012. Based on the way the drug was packaged, Pittsburgh Police task force Detective Eric Harpster believed the heroin was from Detroit. The detective obtained a warrant to install a tracking device on Williams's car. On the day of the fateful traffic stop in January 2013, Detective Harpster tracked the car as it drove from Pittsburgh to Detroit, made a very quick turnaround, and drove back toward Pennsylvania. Detective Harpster contacted Trooper Volk. He asked Trooper Volk to conduct a traffic stop and try to find any heroin that might be in Williams's car.
"The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.' " United States v. Burton , 288 F.3d 91, 100 (3d Cir. 2002) (quoting Pennsylvania v. Labron , 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) ). In Burton , a confidential informant attempting to make a controlled buy of a small amount of cocaine unwittingly interrupted what appeared to be a large drug transaction taking place in a particular house. Id. at 94-95. A police drug task force, alerted to the large transaction, saw the defendant leave the house in question. Id. at 95. He put a plastic bag in the trunk of a car, made a telephone call, and drove away. Id. We ruled that the police had probable cause to search the car at that point "[b]ecause [they] observed Burton leave what they thought to be a drug deal and place the results of that transaction inside his trunk." Id. at 100.
"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.' " United States v. Donahue , 764 F.3d 293, 301 (3d Cir. 2014) (quoting Illinois v. Gates , 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). "At bottom," the probable cause analysis "deal[s] with probabilities." Id. (quoting Gates , 462 U.S. at 231, 103 S.Ct. 2317 ). Here, the probable cause determination is similar to Burton . Williams had previously sold heroin that appeared to be from Detroit to a confidential informant. Williams's car traveled to Detroit on the day in question, turned around quickly, and started traveling back. Looking at these facts in a practical and nontechnical fashion, the probability was that Williams had picked up drugs in Detroit and was bringing them back to Pittsburgh. Therefore, the police had probable cause to search the car regardless of whether Williams consented.
Contrary to Williams's argument, Detective Harpster was not required to recount the full probable cause analysis to Trooper Volk. "[T]he arresting officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause." Burton , 288 F.3d at 99. Nor is Williams persuasive when he implies that Detective Harpster needed to impart a certain quantum of information to Trooper Volk; we have held that "[a]n officer can lawfully act solely on the basis of statements issued by fellow officers ...." Id. at 99 (quoting Rogers v. Powell , 120 F.3d 446, 453 (3d Cir. 1997) ). Finally, the situation did not need to be "dynamic" or "fast-paced" in order to justify Trooper Volk's reliance. The situation in Burton was not particularly dynamic or fast-paced, but even so, we concluded that the arresting *341 officer could rely on the task force officer's instruction. See id. at 94-96.
III.
For these reasons, I concur in the judgment affirming the denial of the suppression motion. However, I would not reach that result on the basis that Williams consented to the search (and failed to effectively withdraw his consent). Instead, I would hold that although he withdrew consent, there was probable cause to search his car. This analysis is more faithful to our Fourth Amendment jurisprudence, and in particular, the reasonableness that is its touchstone.

See, e.g. , Mathis , 136 S.Ct. at 2258 (Kennedy, J., concurring) ("[T]oday's decision is a stark illustration of the arbitrary and inequitable results produced by applying an elements based approach to this sentencing scheme."); id. at 2268 (Alito, J., dissenting) (categorical approach "has increasingly led to results that Congress could not have intended"); see also Shepard v. United States , 544 U.S. 13, 27, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring in part and concurring in the judgment) (criticizing Taylor 's implications for factfinding at sentencing in light of Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ); id. at 35-36, 125 S.Ct. 1254 (O'Connor, J., joined by Kennedy and Breyer, JJ., dissenting) ("The Court's overscrupulous regard for formality leads it not only to an absurd result, but also to a result that Congress plainly hoped to avoid.").

United States v. Robinson , 844 F.3d 137, 142-43 (3d Cir. 2016).